368 So.2d 1066 (1979)
STATE of Louisiana, Respondent,
v.
Henry Peter HARRIS, Relator.
No. 62996.
Supreme Court of Louisiana.
March 5, 1979.
*1067 Norman W. Ershler, De Blieux & Ershler, Baton Rouge, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-respondent.
TATE, Justice.[*]
On application of the relator Harris, we granted certiorari to review the revocation of his probation. 363 So.2d 914 (La.1978).
We were given some concern by a showing that, in violation of constitutional requirements, no prior written notice may have been given to the relator of the misconduct upon which his revocation was based, that documentary evidence of arrest reports may have been considered without additional proof that the underlying actual misconduct had occurred, and that there may be inadequate statement by the revoking judge of the reasons for the revocation.
*1068 This case presents several issues relative to the proper procedures to be followed in probation revocation proceedings. As discussed below, we find the procedures followed in the present case to be constitutionally inadequate, so we remand to the trial court for further proceedings.
Facts
On February 23, 1977 the relator, Henry Harris, was found guilty of attempted manslaughter (by a plea of guilty, relator alleges). He was sentenced to five years imprisonment in the custody of the Louisiana Department of Corrections. However, the sentence was suspended with the special conditions that the defendant serve twenty months in parish prison and refrain from owning or possessing firearms.[1]
On June 3, 1977, the defendant was released from parish prison and made contact with his probation officer. On September 21, 1977, the defendant was arrested on charges of simple burglary and aggravated assault. As a result of these arrests, the defendant's probation officer entered a motion for a probation revocation hearing.[2] This hearing was set for November 17, 1977, but the defendant did not appear as scheduled.
A second hearing was set for January 30, 1978, but again the defendant did not appear, so the matter was reset for March 3, 1978. The defendant again did not appear at the March 3, 1978 hearing, but he was represented by appointed counsel. The court found that the defendant knew that the revocation hearing was supposed to be held on March 3, 1978, had knowledge of the nature of the hearing and had deliberately absented himself from the hearing,[3] so the court over objection of counsel for the defense, began to hear testimony relative to the revocation.
The only testimony heard at the March 3, 1978 hearing was from the defendant's probation officer. He testified that he entered the motion for revocation based upon his receipt of information indicating that the defendant had been arrested on September 21, 1977 for simple burglary and aggravated assault. The probation officer testified that he had spoken to the defendant and that the defendant said the charges were a result of a misunderstanding.
The probation officer also testified that he had been unable, for the most part, to maintain contact with the defendant due to the defendant's lack of cooperation. At the conclusion of this testimony by the probation officer, the court continued the hearing in order to allow the defendant to appear and present testimony on his own behalf. The court also ordered that a warrant be issued for the defendant's arrest to compel his presence.
On June 17, 1978 the defendant was arrested under the warrant issued by the court on March 3,1978.[4] On August 1,1978 the defendant's revocation hearing, which had been continued from March 3, 1978 was resumed. The defense counsel (who was *1069 not the same attorney who represented the defendant at the previous revocation hearing) objected to the proceedings, alleging that the defendant had not been given written notice of the charges against him. The court overruled this objection.
The defendant's probation officer repeated his testimony from the March 3, 1978 hearing relative to the defendant's arrest on the simple burglary and aggravated battery charges,[5] as well as the fact that the defendant had not maintained contact with him. The probation officer also testified that the defendant had been charged with two counts of misdemeanor theft and had been arrested on June 17, 1978 as stated above. The probation officer stated that his records revealed that all of the city court matters were at that time pending.
The probation officer additionally testified that he had been told that the defendant had been charged with robbery in connection with an incident that occurred on June 16, 1978, and that the defendant had been found guilty of contempt of court in a different section of district court, apparently because of incidents which took place during the defendant's arraignment on the robbery charge. The probation officer testified that he understood that the robbery charges were pending. He did not introduce any documentation of the contempt conviction.
On cross-examination by the defense, the probation officer testified that he had no personal knowledge of the crimes for which the defendant was arrested and that he had talked to none of the alleged victims. He also testified that he had not given the defendant written notice of the alleged violations for which the revocation hearing was being held. He did testify, however, that he had received a letter from the defendant which indicated that the defendant was aware of the probation violations involved.[6]
At the conclusion of the probation officer's testimony on this August 1 hearing, the court continued the hearing until August 10, 1978 so that the defendant would have time to prepare his defense. In response to the defense request for notice of the alleged causes for revocation, the court ruled that sufficient prior notice was afforded by the testimony of the probation officer at this August 1 revocation hearing.
At the August 10, 1978 hearing the defendant was present with counsel. The defense presented the testimony of two of the defendant's former employers who testified that the defendant had a good work record. One of the employers testified that the defendant was at work all day on June 16, 1978 and consequently could not have been involved in the alleged robbery that took place on that date.
The court allowed the state, over defense objection, to introduce the arrest report from the June 16, 1978 robbery which the probation officer had in his file.[7] The court then announced that it would adjourn to consider its verdict, and that it would take into consideration the police reports relative to the various crimes with which the defendant was charged.[8] Based upon a review of these arrest reports and the testimony *1070 taken at the hearings, the court subsequently ordered the defendant's probation revoked and made the sentence of February 23, 1977 executory, ordering the defendant to be confined in the custody of the Department of Corrections for a period of five years with credit for time served.
The defendant argues six assignments of error to this court relative to the revocation, four of which we find worthy of discussion.[9]
Assignment 1
By this assignment, the petitioner claims that the trial court erred in conducting the March 3, 1978 hearing in his absence. As stated above, the court determined that the petitioner knew about the hearing, but deliberately absented himself from it. Before continuing the hearing, the court heard testimony from the petitioner's probation officer relative to the charged offenses on which the attempted revocation was based.
In Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) the United States Supreme Court found the minimum requirements of due process for parole revocation to include:
"* * * (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."
Probation revocation was found to be indistinguishable from a parole revocation in its practical effect, and these procedural requirements were applied subsequently to probation revocation in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). This court has found the Morrissey/Gagnon rule applicable in Louisiana revocation proceedings. Baggert v. State, 350 So.2d 652 (La.1977); State v. O'Conner, 312 So.2d 645 (La.1975); State v. Harris, 312 So.2d 643 (La.1975).
As noted, one of the requirements of the cited cases is that the defendant have the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation). The state argues that this right of the defendant was protected by the presence of his counsel at the March 3, 1978 hearing. It is also arguably true that the defendant was given the right to confront and cross-examine witnesses, but that he chose not to exercise this right by deliberately absenting himself from the March 3, 1978 hearing.
We do not find it necessary to resolve the issue in the present case. The only witness who testified at the March 3, 1978 hearing, the defendant's probation officer, re-testified at the August 1, 1978 hearing. There, both the defendant and his counsel were present and able to, and in fact did, cross-examine the witness. For this reason, we do not reach the contention of error raised as to the trial court's hearing testimony from the probation officer in the absence of the defendant.
*1071 Assignment 2
By this assignment, the defendant argues that the trial court erred in revoking his probation in the absence of defendant's being informed in writing prior to the hearing of specific violations. The requirement of written notice of the claimed violations of probation is a requirement of the Morrissey/Gagnon rule.
The defendant was not in fact given formal written notice of the charges on which revocation was sought. However, after the court was finally able to obtain the presence of the defendant at the August 1, 1978 hearing, and after the state had presented its evidence of the claimed violations, the court continued the hearing until August 10, 1978 so that the defendant would be able to adequately prepare his defense to the evidence of alleged violations there presented. Even after the specific request of the defendant at the August 1, 1978 hearing, the court did not give the defendant written notice of the charges, because the court, at that time, held that the testimony taken at the August 1, 1978 hearing substantially satisfied the notice requirement.
We would not set aside the revocation solely because no written prior notice of the charges was given in the present case, although undoubtedly that would have been the constitutionally preferable practice. The written notice requirement of Morrissey/Gagnon is stated in the absolute, but we do not believe that the revocation is vitiated solely because, on a date prior to the hearing, the alleged causes for revocation are set forth precisely by sworn testimony instead of by a formal writing.
The purpose of the prior-notice rule, obviously, is to assure that the defendant is given notice of the charges against him and to guarantee evidence that such notice was given, in order that he may prepare his defense. These underlying purposes were served in the present case by the trial court's continuation of the proceedings, after the defendant had heard the probation officer's testimony under oath as to the charges, until a date upon which the defendant could prepare his defense to the charges.
For this reason, this assignment presents no reversible error by the trial court.
Assignment 3
By this assignment, the defendant argues that the trial court committed reversible error in finding violations of the condition of probation that the defendant not engage in criminal conduct, insofar as based solely upon evidence that the defendant was arrested for, but not convicted of, certain criminal charges. We find merit in this assignment.
At a probation revocation hearing, a violation of the conditions of probation may be shown by establishing a criminal conviction or by actual proof of the commission of a crime, apart from conviction. State v. O'Conner, 312 So.2d 645 (La.1975); State v. Harris, 312 So.2d 643 (La.1975).
The holding of these decisions is to the effect that, in those instances in which the state does not prove that defendant was convicted of a crime which would form the basis of a revocation, it must present actual proof that the defendant has engaged in such criminal conduct. Proof of an arrest alone indicates only that a crime may be charged, not that a crime has been committed.
In the present case, the state did not offer proof that the defendant had been convicted of any crimes subsequent to his probation.[10] The only testimonial evidence *1072 as to the fact that the defendant engaged in criminal conduct was by the probation officer, whose hearsay testimony was based upon police reports which were contained in his file on the defendant. Even on the basis of these reports, the probation officer testified only that the defendant had been arrested, but did not give any testimony which would prove the fact of the underlying criminal conduct. Based upon this testimony alone, the revocation would not be valid.
However, in the present case, the judge considered, as documentary evidence of the criminal conduct, the police reports made relative to the arrests for the various crimes with which the defendant was charged. Whether these reports alone should be held to be sufficient evidence of the underlying criminal activity merits very close consideration.
In Gagnon v. Scarpelli, cited above, the Supreme Court stated: "An additional comment is warranted with respect to the rights to present witnesses and to confront and cross-examine adverse witnesses. . . While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." 411 U.S. at 782, 93 S.Ct. at 1760.
This language, arguably, would allow us to hold that the defendant's constitutional rights were satisfied by the procedure followed in this case. Nevertheless, we do not believe that the arrest report of a crime is by itself sufficient evidence of the underlying criminal activity to warrant revocation.
As stated by this court in Baggert v. State, 350 So.2d 652, 655 (La.1977): "Morrissey established as a minimum requirement of due process in revocation hearings `the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).' When the Parole Board has before it allegations of criminal conduct, and it has not been specifically found that confrontation and cross-examination would expose a witness to a significant risk of harm, it is decidedly inappropriate to receive unassailable written reports as the sole evidence of the alleged violation."[11] 350 So.2d at 655.
The facts of the present case illustrate the difficulties with a rule which would allow exclusion of confrontation and cross-examination in cases in which the state seeks to revoke on the basis of alleged criminal activity proved merely by hearsay contained in an arrest report.
One of the police reports reviewed by the judge apparently contained a photograph of a line-up identification of the defendant relative to the alleged June 16, 1978 robbery.[12] This report was the only evidence of this alleged criminal conduct, and the judge apparently based his decision to revoke, at least in part, upon a belief that the defendant had in fact participated in the crime. However, a witness for the defendant, one of his former employers, testified specifically and with certainty that the defendant was at work on the date and at the time of the alleged robbery.
In situations such as the present one, due process considerations require that the defendant be entitled to test the accuracy of the police report and the identifying *1073 witness via cross-examination. State v. Baggert, 350 So.2d 652 (La.1977).[13]
For this reason, we hold that the trial court improperly based its decision to revoke solely on documentary evidence, which in the present case we find to be insufficient proof of the criminal activity in which the defendant is alleged to have participated.[14]
Assignment 6
By this assignment, the defendant argues that the trial court erred in not providing, as required by Morrissey/Gagnon, a written statement as to the evidence relied on and reasons for revoking probation. The defendant argues that without such a statement, it may be difficult to determine which evidence the trial court relied upon and what its exact reasons for revoking the probation were.
The non-compliance with this requirement of Morrissey/Gagnon may undoubtedly make it difficult to determine exactly what evidence (and its exact nature) the trial court relied upon and the exact reason for the revocation of the probation. The rule requiring a written statement by the trial court is similar to, and serves much the same purpose as, the statutory requirement that the sentencing judge in a criminal case must state for the record the considerations taken into account in imposing sentence and the factual basis for them. See La.C.Cr.P. art. 894.1; State v. Scarbrough, 359 So.2d 982 (La.1978); State v. Jackson, 360 So.2d 842 (La.1978).
On the other hand, in our opinion, an oral statement by the trial court of his reasons for revocation, transcribed in the record, is sufficient to satisfy this requirement. In the present instance, as we apprehend the trial court's statements, he did not find cause for violation in the alleged minor violations of parole conditions, insubstantial in nature. See footnote 8 above. He did, however, find adequate cause in the relator's alleged participation in a robbery. Although we do not find this criminal conduct to have been proved adequately, the statement of reasons by the trial judge in the present case adequately affords us a basis to review his contentions and is in substantial compliance with the Morrissey/Gagnon requirement.
We find no reversible merit in this assignment by itself.
Additional Contention by State
In brief, the state argues that the issue before this court is moot. The state contends that the trial court which originally sentenced the defendant was without authority to suspend the sentence and place the defendant on probation, since he had previously been convicted of a felony. See La.C.Cr.P. art. 893 (Supp.1972). In support of this argument, the state provided us with court records which indicate that an accused *1074 bearing the same name as the relator was convicted of a felony (contributing to the delinquency of a minor) in July, 1974, two years prior to the convicted and suspended sentence with which we are presently concerned.
This issue was not raised in the trial court, and this contention is not properly before this court in this writ application by the defendant to review the issues tried below.
The remedy for correction of the sentence, if illegal, is specifically provided by La.C.Cr.P. art. 882(1). See, e. g., State v. Speed, 335 So.2d 28 (La.1976). Additionally, there are indications in the record that the defendant's guilty plea and suspended sentence in 1977 were the result of a plea bargain. If this is true, the trial court may not be able to revoke the suspended sentence made pursuant to the plea bargain, but may be required to vacate the guilty plea in its entirety, since it could no longer be characterized as voluntary because of the non-performance or the impossibility of performance of the plea bargain. State v. Crosby, 338 So.2d 584 (La.1976); State v. Baudoin, 334 So.2d 186 (La.1976).
Conclusion
While we find no reversible merit in five of the assignments of error urged by the relator. Assignment 5, for the reasons stated, requires that we vacate the probation revocation here ordered and remand this case for a further revocation hearing to be conducted consistent with the views above expressed.
REVOCATION OF PROBATION VACATED; REMANDED FOR FURTHER HEARING.
BLANCHE, J., dissented.
NOTES
[*] Judge Pike Hall, Jr., of the Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] These special conditions were imposed pursuant to La.C.Cr.P. art. 895 (Supp.1974), which also provides the general condition of probation that the defendant shall refrain from criminal conduct.
[2] Relator had also been arrested on August 24, 1977 on a misdemeanor theft charge, which the probation officer did not know about at the time he entered the motion. This charge and another misdemeanor theft charge arising out of an incident of December 8, 1977 were pending in Baton Rouge City Court at the time of the revocation hearings on August 1 and 10, 1978. The probation officer apparently did not learn of these charges until sometime in July, 1978.
[3] The court determined that the defendant had knowledge of the hearing and its nature on the basis of letters from the defendant to his probation officer and the presiding judge to this effect, which letters stated that the defendant would not be present at the hearing because he was afraid. Defense counsel objected to the admission of these letters into evidence since there was no proof that the letters were actually written by the defendant.
[4] The defendant was simultaneously arrested for contempt of Baton Rouge City Court due to his apparent failure to appear for trial on the two counts of misdemeanor theft pending against him in city court. See note 2, above. The defendant was also charged with resisting arrest relative to this arrest.
[5] The probation officer's testimony relative to this arrest was identical to his testimony at the earlier hearing, except that he testified further that the victim had told him that he would not press the burglary charge and that he (the officer) had received a letter from the defendant stating that he would plead guilty to a simple battery charge.
[6] Although this letter, according to the record, was filed into the record, it is not contained in the record furnished this court pursuant to its order when certiorari was granted.
[7] This arrest report apparently contained a line-up photograph which was taken relative to the June 16, 1978 robbery charge, with a notation that the victim had picked out the defendant as the perpetrator. This record furnished to this court does not contain a copy of any of the police arrest reports or the line-up photo.
[8] The trial judge specifically stated that he was concerned only with the allegations of criminal conduct, not the issues of whether the defendant had an adequate work record or whether he had complied with reporting requirements. These other arrest reports were considered by the judge, although not introduced into evidence.
[9] We find no merit to defendant's assignment No. 4, by which petitioner argues that the trial court erred in its unilateral and ex parte consideration of documentary evidence. We know of no rule which precludes a judge, as trier of fact, from reviewing in chambers documentary evidence introduced into evidence, or considering prior court proceedings of which the judge may properly take judicial notice.

By assignment No. 6, the defendant argues that the trial judge erred in revoking the probation, when less drastic remedies available under La.C.Cr.P. art. 900 would have sufficed. In support of this proposition, defendant cites State ex rel. Robertson v. Maggio, 341 So.2d 366 (La.1976).
While we find that the procedure by which the petitioner's probation was revoked warrants reversal (see text of this opinion), we are unable to say that criminal violations complained of, if properly proven, do not warrant the drastic remedy of revocation.
[10] The testimony at the hearings indicates that defendant had not been convicted of any of the charges at the time of the revocation, except that he had apparently been convicted of contempt of court. This contempt conviction, however, was not properly proven. The record reveals only a double hearsay statement of the probation officer to support the conclusion that the defendant had in fact been convicted of contempt. Nor do we reach the issue of whether a contempt would, by itself, necessarily constitute a cause for revocation on the ground that the accused had been guilty of "Criminal conduct", La.C.Cr.P. art. 895(A) (1977).
[11] In Baggert we addressed only the question of the applicability of the Morrissey/Gagnon rule to parole revocation proceedings. However, our holding in Baggert applies equally to probation revocation proceedings since there is no difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).
[12] We must surmise that this is the police report which included the photograph, although this fact is not clear from the record, and the police report was not included in the record before us.
[13] We do not hold that the defendant will in all cases be entitled to compulsory process in order to have live witnesses present at the hearing. We do not intend to prohibit use, where appropriate, of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence. (See Gagnon quoted above.) However, this use of documentary evidence must be reconciled with the defendant's right to confront and cross-examine witnesses in all cases unless the hearing officer specifically finds good cause for not allowing confrontation.

For example, Baggert (cited in text) concerned the situation in which the state sought to revoke on the basis of alleged criminal conduct. We held there that the defendant is entitled to be confronted with live witnesses to counter written hearsay reports of criminal conduct.
[14] The trial court indicated its fear that a requirement for compliance with these constitutional prerequisites for revocation might inhibit the future use of probation for criminal convictions. We do not, by our opinion today, announce any rule that revocation requires a full blown confrontation-type hearing, nor do we intend to undermine the valuable rehabilitative tool of probation. We are certain, however, that the trial judge did not intend to state that the defendant in any particular revocation proceeding should not be entitled to enforcement of his constitutional rights, nor that he himself might not afford probation in an appropriate case because the federal constitution imposes certain protections of the individual before his probation may be revoked.