374 So.2d 1256 (1979)
STATE of Louisiana
v.
Rolando SUSSMANN.
No. 64317.
Supreme Court of Louisiana.
September 4, 1979.
John M. Lawrence, Orleans Indigent Defender Program, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-respondent.
DIXON, Justice.
On April 11, 1978 Sussmann pleaded guilty to possession of a stolen automobile valued at $300 and was sentenced to eighteen months in parish prison. His sentence was suspended, and he was placed on active probation for two years. On January 31, 1979 defendant was arrested as a probation violator, and, after a hearing on March 23, 1979, his probation was revoked. Writs were granted to review the revocation.
*1257 The only evidence of the revocation hearing was the testimony of the probation officer and of Sussmann. The probation officer testified that Sussmann's father called him on January 31, 1979 complaining that his son was inhaling paint thinner and was threatening the rest of his family. When the officer arrived at Sussmann's home he described Sussmann as "very hostile towards his family and to us. He was living in the back yard in a dog house, practically. His family said he refused to eat anything and he was very paranoid about everything." The officer also found a plastic bag containing paint thinner.
The probation officer further testified that defendant had a history of intoxication from paint thinner, and that his family could not handle him, "so there was no other way, you know, of doing it." The officer admitted that Sussmann had not been convicted of any offenses,[1] that Sussmann usually kept his appointments with probation officials, that he worked, and that he had paid the $150 to the indigent defenders' program fund which was a special condition of his probation. When asked if Sussmann had violated any of the specific terms of his probation, the officer stated that "technically he may have violated some of the conditions, but mainly his behavior was [the reason the department recommended revocation]."
At the conclusion of the evidence at the revocation hearing, Sussmann's attorney commented that there was no basis to revoke probation, but the trial court disagreed, stating:
"Well, I don't agree with you, Mr. Lawrence. This isn't even close in my mind. Probation is a grace extended by the Court. This Court expects nothing less than exemplary conduct. It's true he wasn't convicted of attempted simple burglary, but certainly in light of his conduct as testified to by the probation officer, and his own admission that he was distorting his mind by this activity.
. . . . .
... I want to make it clear that I'm not pitching the revocation on his being arrested by Jefferson Parish, although I'm not dismissing it from mind either. I'm pitching it, so there'll be no mistake, on his admission that he was sniffing paint thinner, something which will alter his mind, and if his mind is altered, my reasoning is he can't comply with the conditions of his probation, and it does not reflect a true contrite spirit that I expect of him to be at liberty in this community, particularly on the complaint of his own parents. It doesn't show such an attitude that would lend itself to .. rehabilitation.
So I find no difficulty. I revoke his probation, and the sentence that I suspended on April 11th, '78, is made executory, with the sincere hope that perhaps incarceration will convince the defendant that he has to change his ways. I tried to help you, son, and I cannot, and nobody can help you unless you want to help yourself. You might consider that during your confinement. Remand him."
Sussmann contends that the trial court erred in revoking his probation and in making *1258 his eighteen months sentence executory, because defendant was not shown to have violated any conditions of his probation.
When the court places a defendant on probation, C.Cr.P. 895 provides that the court shall require the defendant to refrain from criminal conduct. The court may also impose any specific conditions reasonably related to his rehabilitation, including any of the nine enumerated conditions in that article.
Sussmann's revocation certificate, pursuant to C.Cr.P. 895, set forth the general and special conditions of his probation, and he agreed in writing to those conditions, which were:
"1. Refrain from criminal conduct, specifically the violation of any State, Federal, Local or Municipal Law.
2. Support your legal dependents to the best of your ability.
3. Report to your Probation Officer as directed.
4. Permit the Probation Officer to visit you at home or elsewhere.
5. Devote yourself to an occupation approved by your Probation Officer.
6. Refrain from owning or possessing firearms or other dangerous weapons.
7. Make reasonable reparation or restitution to the aggrieved party for damage or loss caused by your offense in an amount determined by court, if any, as follows: (blank space)
8. Refrain from frequenting unlawful or disreputable places or consorting with disreputable persons.
9. Remain within the jurisdiction of the court and get the permission of the Probation Officer before any change in your address or employment.
10. Make a full and truthful report at the end of each month to your Probation Officer, whose address is:
Mr. Edward G. Nick, District Supervisor II
New Orleans District
4335 Elysian Fields Avenue
New Orleans, Louisiana 70122
11. Special Conditions are as follows:
Pay $150 to the Orleans Indigent Defender Program within six months of date hereof and court costs of $70, executory on 5-11-78."
Sussmann's notice of the hearing stated that the State was praying for revocation of his probation because he had been inhaling "paint lacquer" which caused his behavior to be very erratic, he had threatened his family with physical violence, and he had been unable to maintain any type of employment.
At the hearing, the probation officer's report was the only evidence that Sussmann threatened his family; his family did not testify to the truth of this matter nor did the State introduce affidavits, depositions or other material evidence of any threats to his family. This hearsay evidence would have been insufficient proof of criminal activity upon which to base a revocation. State v. Harris, 368 So.2d 1066 (La. 1979).[2] Without further evidence to support either the allegation of physical threats to his family or of failure to maintain employment, the State did not establish that Sussmann violated or was about to violate these conditions of his probation.
Moreover, the trial judge did not revoke Sussmann's probation for these reasons (which were not supported by the record). He revoked probation for sniffing paint *1259 thinner, and because confinement in parish prison might convince defendant to change his ways. The judge spoke of probation as a grace, and that he expected nothing less than exemplary conduct.
Revoking Sussmann's probation for these reasons was improper. None of the conditions of probation referred to the use of paint thinner or other intoxicants. Revocation for unlisted and unexplained special conditions is a denial of minimum due process rights.
The trial judge apparently thought that "If the probationer's conduct shows a gross nonconformist attitude and a serious violation was only prevented by alert action of the probation supervisor, revocation of probation is appropriate." Official Revision Comment (c) to C.Cr.P. 900. However, there was no evidence that a violation of a condition of defendant's probation was about to occur. Perhaps evidence of sufficient probative value could have been introduced to show criminal conduct of a serious nature, but it was not developed.
Furthermore, not every probation violation is serious enough to warrant the drastic sanction of revocation. C.Cr.P. 900 vests the trial judge with wide discretion when a condition of probation is violated, because the legislature recognized the necessity of judicial discretion in dealing with probation violations, which can be either minor or serious. With C.Cr.P. 900 the legislature intended the punishment for probation violations to be tailored to the facts of the case, the seriousness of the misdeed, and the needs of the probationer. State ex rel. Robertson v. Maggio, 341 So.2d 366 (La.1976). In Robertson we held that a district judge improperly disregards the mandate of article 900 if he follows a harsh and arbitrary policy of revoking probation for every violation, which amounts to a failure to exercise judicial discretion. The revocation of probation for a relatively minor violation may be reversible error. State v. Lassai, 366 So.2d 1389 (La.1978); State ex rel. Robertson v. Maggio, supra.
In the instant case, where the record does not support a present violation nor a definable future violation, whether minor or serious, then fundamental fairness requires the exercise of sound discretion. The record before us does not support the decision to revoke Sussmann's probation.
The judgment revoking defendant's probation and the order making the sentence of April 11, 1978 executory are reversed.
SUMMERS, C. J., dissents.
NOTES
[1] At the hearing Sussmann admitted that he had been arrested and charged with attempted simple burglary in Jefferson Parish, but the charges were dropped. This evidence was not sufficient to establish that Sussmann violated the condition of probation that he not engage in criminal conduct because Sussmann was only arrested for, but not convicted of, this criminal charge. State v. Harris, 368 So.2d 1066 (La. 1979). At a revocation hearing, a violation of the conditions of probation may be shown by establishing a criminal conviction or by actual proof of the commission of a crime, apart from conviction. State v. Davis, 375 So.2d 69 (La.1979), citing State v. O'Conner, 312 So.2d 645 (La.1975) and State v. Harris, 312 So.2d 643 (La.1975). As this court explained in State v. Harris, 368 So.2d 1066 (La.1979), the holding of these decisions is that in those instances in which the State does not prove that defendant was convicted of a crime which would form the basis of a revocation, it must present actual proof that the defendant has engaged in such criminal conduct. Proof of an arrest alone indicates only that a crime may be charged, not that a crime has been committed.
[2] In State v. Harris, 368 So.2d 1066, 1073, n. 13 (La. 1979), we explained:

"We do not hold that the defendant will in all cases be entitled to compulsory process in order to have live witnesses present at the hearing. We do not intend to prohibit use, where appropriate, of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence.... However, this use of documentary evidence must be reconciled with the defendant's right to confront and cross-examine witnesses in all cases unless the hearing officer specifically finds good cause for not allowing confrontation.
For example, Baggert [Baggert v. State, 350 So.2d 652 (La.1977)] concerned the situation in which the state sought to revoke on the basis of alleged criminal conduct. We held there that the defendant is entitled to be confronted with live witnesses to counter written hearsay reports of criminal conduct."