BOWES, Judge.
Defendant, Ernest Johnson, appeals a judgment revoking his probation. For the following reasons, we annul the judgment of revocation and remand.
The State charged the defendant, Ernest Johnson, by a bill of information with possession of a controlled dangerous substance, to-wit: Cocaine under LSA-R.S. 40:967. At arraignment, the defendant pled not guilty. Subsequently, the defendant pled guilty as charged pursuant to a plea agreement. The trial court then sentenced the defendant to five years at hard labor; however, the court suspended the sentence and placed the defendant on active probation for three years subject to the following conditions:
(1) Pay a $10.00 monthly probationary fee;
(2) Pay $750.00 I.D.B. fine and a $50.00 LCLE cost over the probationary period pursuant to a payment schedule set by the Probation Department;
(3) Perform 100 hours of community service; and
(4) Enroll in the Jefferson Parish Substance Abuse Clinic and submit to weekly urinalysis.
On September 11, 1991 the trial court issued a warrant for the defendant’s arrest pursuant to an affidavit executed by the probation officer then handling the case alleging that the defendant violated conditions of his probation. Subsequently, on November 20, 1991 this probation officer filed a rule to revoke probation accompanied by a sworn affidavit and with the attached order the court set the matter for January 13, 1991. At the conclusion of the revocation proceeding held that day, the trial court revoked the defendant’s probation and reinstated the original sentence of five years at hard labor with an allowance for credit for time served. The defendant has appealed.
At the outset we note that a defendant has no right to appeal a probation revocation; the defendant submits the appeal as an application for a supervisory writ and in the interest of judicial economy, we consider the appeal as such. See State v. Norwood, 587 So.2d 75 (La.App. 5 Cir.1991); State v. Forest, 571 So.2d 893 (La. App. 5 Cir.1990), writ denied, 577 So.2d 13 (La.1991).
The defendant is a first offender, having never been arrested prior to the original incident. The affidavit filed by the Probation Office in connection with the rule to revoke probation incorrectly stated, among other things, that the defendant had not reported to the office, had moved from his address of record, and had absconded supervision on or about February 23, 1990. In two other allegations of that affidavit, the officer repeated the allegation that the defendant had “moved without permission or notification” or “without prior permission, and his whereabouts are unknown.” The rule itself repeated these allegations again.
The record discloses that at the time of the revocation proceeding, the defendant’s address was the same as it was on the date of the original proceedings. In fact, from his arrest, through the time he was placed on probation, through the date the rule to revoke was filed and at the time of the hearing, defendant’s address has remained constant and identical — “1333 S. Dilton Street, Metairie.” Therefore, allegations to the contrary in the rule and affidavit were clearly erroneous and untrue.
Nevertheless, at the hearing on the rule to revoke, the probation officer, Daryl Na-quin, testified that probation condition number three had been violated, because Johnson had not reported to the Probation Office and had absconded supervision.
The officer then testified that he had never seen Johnson in his office, nor had Johnson ever contacted him. Naquin also testified that Johnson had not paid any amount on the fines or costs, had not performed any community service nor had he enrolled or completed a drug program and had not submitted to weekly testing. However, on cross-examination, Naquin, who worked in the East Bank office, acknowledged not receiving (on transfer from the West Bank office) this case until May 30, 1991, a year and three and a half months after Johnson was placed on probation; and other uncontradicted evidence and tes *261 timony showed that the officer first assigned to the case was Vanessa Canty of the West Bank office who told Johnson that she was going to transfer his case to the East Bank where he lived and that he would be contacted by another officer. Naquin also testified that an arrest warrant was issued on February 26, 1990 (just a few weeks after Johnson was placed on probation) and the case was put “into our warrant status where we file those cases” — and apparently Johnson’s residence status was never checked again.
Ernest Johnson then testified on his own behalf. He stated this experience was the first time he had ever been placed on probation and he was obviously somewhat confused about the whole thing. Johnson said:
Two months after my release, I was informed by the West Bank Probation Office that I was being transferred to the East Bank Office. I reside at 1333 South Dilton, in Metairie, and a new probation officer would contact me in the near future. I heard nothing further until I was arrested on October 11th of this year for probation violation.
On cross-examination, Johnson was asked why he did not report to his probation officer. He testified that:
The probation officer that I had received was Vanessa Canty. And when I did see her, she had told me they would contact me to let me know, they would transfer me to another probation officer on the other side of the water, on the other side, that I would be able to get to. Which I did not receive no kind of statement saying who as my other probation officer.
He further testified that he did contact the Probation Department but “when I did, she (Vanessa Canty) said no, but she will see me when she can.” He also testified “I came three days as she required me to” and “I explained to her I was steadily looking for work and what I was doing around the neighborhood.” The State has not disputed the above testimony either in court or in their brief.
It is apparent that a miscommunication somewhere within the Probation Department took place since the defendant never changed his residence nor absconded from jurisdiction. The miscommunication was never cleared up since the testimony indicates that the Department still listed the defendant in their file as having absconded as of the date of the hearing yet also still listed defendant’s correct address — 1333 S. Dilton Street.
Under LSA-C.Cr.P. art. 900, there are many alternatives less harsh than revocation for the sentencing judge to select from, when a defendant is guilty of violating probation conditions — such as a reprimand, a warning, imposing additional conditions, intensification of supervision, extension of the probationary period, or commission to a rehabilitation center. Granted, the defendant probably should have made an effort of his own, after a reasonable time, to re-establish contact with the probation office. However, the obvious fact that defendant still lived at the same address and had never absconded should have alerted the court that a mistake had been made; and while the defendant should be charged with some responsibility, his inaction was merely passive and pales in comparison to the magnitude of the errors on the part of the Probation Department.
From the evidence produced, Johnson appears to be a good risk for continuation on probation. Prior to this, his only arrest, Johnson had been gainfully employed for three years in a full time job as a maintenance worker. During the nearly two years he was on probation, he was not arrested for any crimes, felonies or misdemeanors. While he had not been able to find full time employment since being placed on probation, he had worked at odd jobs and had just obtained a job as a night warehouse clerk at Winn-Dixie when he was arrested on the probation violation. That job was apparently still available at the time of the revocation hearing. Johnson is married and he and his wife are raising six children between the ages of seven and seventeen. He is active in his church serving as an usher every Sunday.
Because these facts were fully brought out at the hearing (although perhaps not fully recognized by the trial judge), it was *262 error and an abuse of the trial judge’s discretion, to revoke Johnson’s probation under these circumstances and to order the sentence of five years at hard labor to be executed.
In State v. Sussmann, 374 So.2d 1256 (La.1979), our Supreme Court stated as follows:
... not every probation violation is serious enough to warrant the drastic sanction of revocation. C.Cr.P. 900 vests the trial judge with wide discretion when a condition of probation is violated, because the legislature recognized the necessity of judicial discretion in dealing with probation violations, which can be either minor or serious. With C.Cr.P. 900 the legislature intended the punishment for probation violations to be tailored to the facts of the case, the seriousness of the misdeed, and the needs of the probationer. State ex rel. Robertson v. Maggio, 341 So.2d 366 (La.1976).
[Emphasis supplied].
Here, we find that the trial judge did not tailor the punishment to fit either the probation violations or the needs of the defendant.
In this case, Johnson was a probationer for the first time in his life and he had reported to the West Bank Probation Office. He was told by the Department of Probation that his case was being transferred to the East Bank and he would be notified of his new agent. The Department undisputedly provided no such notification. Furthermore, the Department was obviously in error in issuing an arrest warrant on the basis that Johnson had moved his residence and had absconded when in fact he continued to live in the exact same place. They apparently made no effort to contact Johnson since they had assumed he had fled — and the correct facts were in their file even at the time of the revocation hearing. The result is that a gross bureaucratic mix-up has resulted in a critical miscarriage of justice with damaging consequences for this defendant and his family.
Finally, an error patent review indicates error. The sentencing transcript reveals that the trial court did not impose the $25.00 clerk’s fee, $12.50 sheriff’s cost, $17.50 IDB fee, $100.00 victim fee, $50.00 deputy fee, $10.00 D.A.’s cost and the $10.00 coroner’s fee as conditions of probation unlike the minute entry and suspended commitment which reflects the contrary. Because the transcript prevails when there is a discrepancy, the commitment and minute entry must be amended to reflect the conditions actually imposed and delete the above.
For the foregoing reasons the judgment revoking Johnson’s probation and ordering the five year sentence to be executed is annulled and set aside and the case is remanded to the trial judge for a new hearing and a fresh look at all the facts pointed out herein. The learned trial judge is instructed to continue the defendant’s probation with or without additional — or possibly different — conditions which the defendant can meet in his present circumstances. If he fails this time because of his own fault, the trial judge will still have ample opportunity to revoke his probation in the future. Additionally, the trial court is directed to amend the commitment and minute entry to reflect the conditions actually imposed at the time of sentencing as revealed in the transcript.
JUDGMENT ANNULLED AND SET ASIDE; CASE REMANDED.
WICKER, J., concurs in the decree.
DUFRESNE, J., dissents.