h CARAWAY, J.
• This court granted a supervisory writ to review the ruling revoking defendant’s probation to address issues regarding the admissibility of certain hearsay evidence and sufficiency of the evidence to revoke probation. Although we find that two of the conditions of probation were shown to have been violated, the court erred in finding that a third, and more serious, violation was proven by the hearsay evidence presented by the state. Accordingly, we remand for the trial court to reconsider the revocation of probation and sentence imposed in view of the defendant’s violation of the two conditions of probation.

Facts

On May 14, 2003, David Lee Rochelle pled guilty to DWI, third offense, and was sentenced to five years in prison with all but 30 days suspended. Rochelle was placed on supervised probation with 27 general and special conditions.
On October 20, 2003, Rochelle’s probation officer, Shirley Daniels-Warren, filed a motion and order for hearing to revoke probation. The motion listed the specific conditions of probation that Rochelle allegedly violated and the facts of the violations as follows:
*252 13. Participate in a Court approved driver improvement program at his expense.
Rochelle Has Failed to Attend the Driver Improvement Class. He Was Scheduled to Attend on Two Different Occasions (7-12-03 & 10-11-03)
14. Be evaluated to determine nature of substance abuse disorder. Substance abuse treatment at inpatient facility.
1 ..Rochelle has been on probation since May 2003 and has not completed an inpatient program.[1]
On November 4, 2003, a pre-probation revocation hearing was conducted and the trial court, on Daniels-Warren’s recommendation, ordered that Rochelle be incarcerated without bond pending the outcome of the revocation hearing as he had that day tested positive for marijuana and cocaine use[2]. The following day, November 5, 2003, Daniels-Warren amended the motion for revocation to add the following alleged probation violation:
Refrain from criminal conduct and pay a supervision fee to defray the costs of probation supervision.
COUNT 1: Rochelle failed to refrain from criminal conduct in that on 11/4/03 he tested positive for the use of marijuana and cocaine.
Trial of the matter occurred on December 16, 2003. The state’s sole witness was Daniels-Warren who affirmed her status as Rochelle’s probation and parole officer and testified to her knowledge of Rochelle’s probation conditions. Rochelle, who was represented by counsel, did not testify at the hearing or present evidence contrary to the state’s evidence.
1 ^Regarding the allegation that Rochelle failed to complete an inpatient program, Daniels-Warren testified that after Rochelle was evaluated by the Northwest Regional Center for Addictive Disorders, he was told that he would be placed on a list for bed availability and was required to attend a group session to remain on the list until then. She stated that when a bed became available, Rochelle would go to a specific treatment facility. In the meantime, Rochelle was scheduled to participate in outpatient group therapy beginning June 24, 2003. Rochelle’s counsel objected to this testimony on the grounds that it constituted hearsay evidence of which Daniels-Warren had no personal knowledge. The trial court noted the objection, allowing Daniels-Warren to continue her testimony., When asked whether she knew if Rochelle had attended the meetings, Daniels-Warren referred to four letters (dated July to October 2003), addressed to her from the Department of Health and Hospitals (“DHH”), which indicated that Rochelle had not attended any of the outpatient meetings. Again Rochelle’s counsel objected to the testimony as hearsay. The court allowed the objection to be continuing and overruled it. Daniels-Warren *253 was then specifically questioned regarding the DHH letter, indicating that Rochelle had been evaluated on June 19, 2003, and was scheduled to attend group meetings beginning June 24, 2004. The state then examined Daniels-Warren extensively as to the content of the DHH letters which demonstrated Rochelle’s lack of attendance at group meetings. In fact, the documents showed that DHH ultimately closed Rochelle’s case for such noncompliance. Daniels-Warren testified that in spite of his noncompliance [4with this probation requirement, Rochelle reported to her monthly. Daniels-Warren discussed this problem with him on October 16, 2003, and he received photocopies of the letters as well. After this testimony was elicited, Rochelle’s counsel objected to the introduction of the DHH letters as hearsay evidence because the custodian of the records did not certify the documents. Nevertheless, the letters were permitted to be introduced into evidence.
Daniels-Warren also testified regarding Rochelle’s failure to attend driving improvement training. She identified a letter she wrote to Rochelle, which he signed to acknowledge, advising him to report to the Bienville Parish Sheriffs Office on July 12, 2003, for a Driver Improvement Class. Daniels-Warren then identified a second letter she wrote to Rochelle on August 6, 2003, reminding him of his failure to attend the previous training and requiring him to attend the training on October 11, 2003. Rochelle did not attend either meeting.
As for the state’s final allegation of grounds to revoke probation, Daniels-Warren testified that Rochelle submitted a urine sample on November 4, 2003. Daniels-Warren was not present when the test was given. Daniels-Warren received the results of the test by observing the “top of the cup” which indicated that Rochelle had tested positive. Rochelle’s counsel objected to Daniels-Warren’s lack of qualification as an expert witness in chemical analysis and the court required the state to lay a further foundation for the testimony. Daniels-Warren explained that she received drug test kit training, including instruction on obtaining samples and reading the drug kit results. The kit used by Rochelle was a new type which she was | Ralso trained to utilize. Daniels-Warren said that she read Rochelle’s test which was positive for cocaine and marijuana. Rochelle did not request that the urine be submitted to the lab nor did he deny that the test was positive. Rochelle’s counsel continued to object to the lack of Daniels-Warren’s certification. The trial court consistently overruled the objection. Daniels-Warren then explained that after the test results were obtained, Rochelle was allowed to return to the court room for the scheduled pre-revocation hearing and he was arrested that day.
On cross-examination, Daniels-Warren testified that the drug cup utilized for the test did not contain the defendant’s name or an identification number. She stated that the only time a cup is labeled is when it is sent to the lab at a defendant’s request. She admitted that she did not know if anybody was present when Rochelle was given his test because she was in court and Specialist Armond of the La. Department of Probation and Parole administered the test. Daniels-Warren did not know if anyone else was present when Rochelle urinated into the cup. She knew that Rochelle should have come out of the bathroom and taken the cup to a probation officer. Armond would have kept the cup in her custody. Yet, other people were tested that day and the specimens would have been left in an unlocked office. Daniels-Warren further stated that she did not recall if she informed Rochelle that he could have the test submitted to a lab.
*254 Regarding the new kit utilized for Rochelle’s urinalysis, Daniels-Warren testified that the test was activated by tilting the cup and either the officer or the defendant could do so. Daniels-Warren also stated that the | (¡specimens are destroyed if no request for a lab evaluation is made. Daniels-Warren testified that she is certified to read the test results and can tell whether a cup is positive or negative. She explained that the cup has two lines and a positive or negative result registers within the lines within a five-minute period. Her policy is to complete the test, show the defendant, and if he or she does not want further testing, to destroy the cup. Daniels-Warren admitted that she was not in the room when Rochelle brought his urine cup to Armond. She saw it later and could not recall if she or Armond activated the test. She said she knew it was Rochelle’s test because he “brought it back to Ms. Armond.”
Based upon this evidence, the court ruled that the state had adequately shown that Rochelle had violated three conditions of his probation, in failing (i) to refrain from criminal conduct by testing positive for cocaine and marijuana use, (ii) to attend his driver improvement program, and (iii) to attend inpatient group programs. Accordingly, the court imposed the original five-year term of Rochelle’s sentence. Rochelle objected to the ruling and has pursued this appeal.

Discussion

On review Rochelle raises issue with the adequacy of the evidence to sustain the revocation on the basis of his objections to the hearsay evidence and non-expert nature of Daniels-Warren’s testimony.
The provisions guiding the trial court in the context of a probation revocation hearing are contained in La. C. Cr. P. art. 900. Those provisions provide in pertinent part:
|7A. If the court decides that the defendant has violated, or was about to violate, a condition of his probation it may:
(1) Reprimand and warn the defendant.
(2) Order that supervision be intensified.
(8) Add additional conditions to the probation.
(4) Order the defendant, as an additional condition of probation, to be committed to a community rehabilitation center operated by, or under contract with, the Department of Public Safety and Corrections for a period of time not to exceed six months, without benefit of parole or good time....
(5) Order that the probation be revoked. In the event of revocation the defendant shall serve the sentence suspended, with or without credit for the time served on probation in the discretion of the court. If the imposition of sentence was suspended, the defendant shall serve the sentence imposed by the court at the revocation hearing.
(6) Extend the period of probation, provided the total amount of time served by the defendant on probation for any one offense shall not exceed the maximum period of probation provided by law.
D. When a court considers the revocation of probation, the court shall consider aggravating and mitigating circumstances in the case, including but not limited to the circumstances stated in Article 894.1. If the court revokes the probation of the defendant, the court shall issue oral or written reasons for revocation which shall be entered into the record. The oral or written reasons for revocation shall state the allegations *255 made by the probation officer concerning a violation or threatened violation of the conditions of probation, the findings of the court concerning those allegations, the factual basis or bases for those findings, and the aggravating circumstances, or mitigating circumstances, or both, considered by the court.
Louisiana courts have interpreted this provision to vest the trial judge with wide discretion when a condition of probation is violated and have held that the legislature intended punishment for probation violations to be tailored to the facts of the case, the seriousness of the misdeed, and the needs |sof the probationer. State ex rel. Robertson v. Maggio, 341 So.2d 366 (La.1976); State v. Sussmann, 374 So.2d 1256 (La.1979).
Likewise, this provision is interpreted as providing for an informal and summary hearing. State v. Lucas, 385 So.2d 253 (La.1980). Nevertheless, the Code of Criminal Procedure clearly contemplates that the defendant be given an opportunity to explain mitigating circumstances relating to the violation before the judge decides on whether to revoke probation. Id.
A probation revocation hearing is not a stage of a criminal proceeding, but does result in a loss of liberty. Therefore, the full panoply of rights due defendant in such proceedings does not apply. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Breiver, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); State v. Black, 97-0774 (La.12/12/97), 706 So.2d 423. See also, State v. Duhon, 95-2724 (La.5/21/96), 674 So.2d 944. This law applies to Louisiana revocation proceedings as well. State v. Harris, 368 So.2d 1066 (La.1979); Baggert v. State, 350 So.2d 652 (La.1977); State v. O’Conner, 312 So.2d 645 (La.1975). The hearing is subject to due process safeguards, including an adequate notice and opportunity to present evidence. State v. O’Conner, supra. Additional rights include the opportunity to be heard in person and the right to confront and cross-examine adverse witnesses. Morrissey v. Brewer, 408 U.S. at 489, 92 S.Ct. 2593; Gagnon v. Scarpelli 411 U.S. at 786, 93 S.Ct. 1756. Because the revocation hearing is in no way equated with a criminal prosecution, the process should be flexible enough to consider evidence including letters,_[¿affidavits and other material that would not be admissible in an adversary criminal trial. Id.
Regarding the application of the Louisiana Rules of Evidence to various proceedings, La. C.E. art. 1101 provides in pertinent part:
B. Limited applicability. Except as otherwise provided by Article 1101(A)(2) and other legislation, in the following proceedings, the principles underlying this Code shall serve as guides to the admissibility of evidence. The specific exclusionary rules and other provisions, however, shall be applied only to the extent that they tend to promote the purposes of the proceeding.
(1) Worker’s Compensation cases.
(2) Child custody cases.
(3) Revocation of probation hearings.
(4) Preliminary examination in criminal cases, and the court may consider evidence that would otherwise be barred by the hearsay rule.
C. Rules inapplicable. Except as otherwise provided by Article 1101(A)(2) and other legislation, the provisions of this Code shall not apply to the following:
(1) The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by Article 104.
*256 (2) Proceedings with respect to release on bail.
(3) Disposition hearings in juvenile cases.
(4) Sentencing hearings except as provided in Code of Criminal Procedure Article 905.2 in capital cases.
D. Discretional applicability. Notwithstanding the limitations on the applicability of this Code stated in Paragraphs A, B and C of this Article, in all judicial proceedings a court may rely upon the provisions of this Code with respect to judicial notice, authentication and identification, and proof of contents of writings, recordings, and photographs as a basis for admitting evidence or making a finding of fact.
Specifically, the courts have held that the formal rules of procedure and evidence are not employed in a probation revocation hearing. State v. Davis, 375 So.2d 69 (La.1979), citing Gagnon v. Scarpell 411 U.S. at 786-787, 93 S.Ct. 1756; State v. Fields, 95-2481 (La.App. 1st Cir.12/20/96), 686 So.2d 107. See also State v. Black, supra, noting the relaxation of the rules of evidence in a probation revocation hearing. For example, the Miranda rule has not been extended to probation hearings. State v. Lassai, 366 So.2d 1389 (La.1978); State v. Edwards, 440 So.2d 845 (La.App. 2d Cir.1983). Nor is the exclusionary rule generally applicable in probation revocation hearings and evidence derived from an unreasonable search and seizure is admissible in such hearings. State v. Black, supra; State v. Davis, supra. The double jeopardy protections of the United States Constitution do not apply to revocation hearings because revocation sanctions are part of the original sentence. United States v. Wyatt, 102 F.3d 241 (7th Cir.1996), cert. denied, 520 U.S. 1149, 117 S.Ct. 1325, 137 L.Ed.2d 486 (1997), cited with approval in Johnson v. United States, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000); State v. Black, supra; State v. Curtis, 28,309 (La. App.2d Cir.8/21/96), 679 So.2d 512, writ denied, 96-2322 (La.2/7/97), 688 So.2d 496. There is also no requirement that strict adherence to the formal rules governing certification or authentication of documents is necessary in a probation revocation hearing. State v. Pearson, 424 So.2d 399 (La.App. 2d Cir.1982).
Both before and after the enactment of Article 1101(B) of the Code of Evidence, the jurisprudence has indicated that hearsay evidence is admissible in a probation revocation hearing. State v. Black, supra; State v. Fields, supra; State v. Sussmann, supra; State v. Harris, supra; State v. Lassai, supra; See also Baggert v. State, supra (involving a parole revocation hearing). Some of this jurisprudence has indicated, however, that hearsay evidence alone is insufficient proof of criminal activity upon which to base a revocation. State v. Fields, 686 So.2d at 110, citing State v. Sussmann, supra. Additionally, in State v. Lassai, the court indicated that a “urinalysis” document was improperly introduced without the supporting testimony of its author. The court indicated that the introduction of the hearsay document “violated minimum due process rights of confrontation and examination of witnesses.” 366 So.2d at 1391. Later, recognizing the “difficulties” with that rationale pitting an allowance for hearsay against the right of confrontation, the court noted in State v. Harris:
We do not hold that the defendant will in all cases be entitled to compulsory process in order to have live witnesses present at the hearing. We do not intend to prohibit use, where appropriate, of the conventional substitutes for live testimony, including affidavits, *257 depositions, and documentary evidence. (See Gagnon quoted above.) However, this use of documentary evidence must be reconciled with the defendant’s right to confront and cross-examine witness in all cases unless the hearing officer specifically finds good cause for not allowing confrontation.
368 So.2d at 1073, fn. 13.
The Louisiana Supreme Court has not specifically addressed the use and weight of hearsay evidence in probation revocation proceedings since the enactment of Article 1101(B). In Chaisson v. Cajun Bag and Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, the court did consider the use of hearsay in worker’s compensation proceedings which also have the relaxed evidentiary standard under Article 1101(B). The court concluded that the | shearing officer has discretion to admit hearsay evidence so long as the evidence exhibits some degree of reliability and trustworthiness and is of the type upon which reasonable persons would rely. Id. at 382.
The federal courts have adopted a balancing test regarding the admissibility of hearsay evidence in revocation proceedings which weighs the defendant’s interest in confronting a particular witness against the government’s good cause for denying it, particularly focusing on the indicia of reliability of a given hearsay statement. United States v. Kindred, 918 F.2d 485 (5th Cir.1990). Other courts have considered the importance of the hearsay evidence to the court’s ultimate finding and the nature of the facts to be proven by such evidence in this balancing approach to the admissibility of hearsay evidence in revocation proceedings. United States v. Comito, 177 F.3d 1166 (9th Cir.1999). The federal courts have generally allowed the admission of drug test reports through the testimony of a probation officer because these reports are “the regular reports of a company whose business it is to conduct such tests,” and the government has an interest in minimizing the difficulty and expense of procuring witnesses for revocation hearings. Thus, in the absence of any evidence tending to contradict the defendant’s drug use or the accuracy of the lab tests, a defendant’s confrontation rights are not infringed by the admission of the urinalysis test results through a probation officer’s testimony. United States v. Kindred, supra, citing United States v. Penn, 721 F.2d 762 (11th Cir.1983) (which allowed as proof in a revocation proceeding the hearsay testimony of a probation officer and the lab reports and letter from the | ^president of the lab). Regular business reports, like the urinalysis test, are ordinarily more reliable than oral hearsay statements. United States v. Kindred, 918 F.2d at 487, fn. 2. Courts have, however, found that hearsay testimony which consists of a witness reporting another person’s unsworn verbal statements was not reliable in the context of revocation proceedings. United States v. Comito, 177 F.3d at 1171. Courts have also questioned the reliability of police reports when presented through the testimony of police officers. United States v. Comito, supra; Farrish v. Mississippi State Parole Bd., 836 F.2d 969 (5th Cir.1988). Letters written to a probation officer in the form of an official report from the federal program coordinator of a well-established organization have been held to be reliable hearsay under the subject balancing test. United States v. McCallum, 677 F.2d 1024 (4th Cir.1982).
In this case, two of defendant’s probation violations were adequately established by Daniels-Warren’s testimony and the documentary evidence. The evidence of Rochelle’s failure to attend the driver improvement programs involved no hearsay evidence which was objected to at *258 the hearing and is therefore uncontested in this appeal. Rochelle’s failure to attend inpatient group programs was established by the direct testimony of Daniels-Warren and by the DHH letters written on state letterhead indicating the governor’s seal. The letters, which were copied to Rochelle at a specified address, informed him that he was on the inpatient waiting list, “however, this patient must participate in the outpatient group listed below until the bed becomes available.” Daniels-Warren testified that when Rochelle was in her | uoffice on June 19, 2003, he was told to begin attending the outpatient meetings. She also discussed noncompliance with him on October 16, 2003. Accordingly, we find that the hearsay evidence used as proof of this violation is competent evidence exhibiting a degree of reliability and trustworthiness. In combination with the testimony of Daniels-Warren providing direct evidence of the instructions provided to defendant about outpatient and inpatient services, this probation violation was properly established by the evidence.
In contrast, the last probation violation concerning the failed drug test was established entirely by hearsay evidence. Although Daniels-Warren’s testimony was uncertain at one point about her role in the procedure, she indicated that the test was conducted almost exclusively by the other probation officer, Armond, who did not testify. No affidavit or contemporaneous report of the procedure was prepared by Armond and introduced at the hearing.[3] Thus, Daniels-Warren testified to information Armond told her about Rochelle’s urinalysis kit result. Under the Louisiana jurisprudence, we therefore find that evidence of this subsequent criminal activity resting on the hearsay evidence in this case was insufficient to establish the probation violation. State v. Lassai, supra; State v. Sussmann, supra; State v. Fields, supra.
In reaching this conclusion, we note that the defendant, who was present at the hearing, gave no testimony disputing the drug test. Since this 11Kwas not a criminal prosecution, his Fifth Amendment privilege was not necessary for his protection, and like a sentencing hearing, he might be expected to offer evidence in mitigation or directly dispute the hearsay evidence of his prior actions offered against him. Nevertheless, from our review of the above law, there is no requirement that the defendant dispute in any manner the hearsay evidence presented against him even though he possessed direct knowledge of the actions indicated by the hearsay evidence. The court must consider the nature of the hearsay testimony and determine whether it is sufficient for proof of the probation violation.
Since we find that the trial court erred in finding that Rochelle violated his probation by the criminal conduct attempted to be proven concerning the drug screen, we remand this case for reconsideration of the revocation sentence imposed for the violations of the other two conditions of probation which were proven in the proceedings. As noted above, double jeopardy protections are not applicable, and the state is not precluded from further action regarding the third alleged probation violation.
REMANDED FOR FURTHER PROCEEDINGS.
GASKINS, J., concurs with reasons.

. The specific provisions of Rochelle's special conditions of probation contained two clauses pertaining to substance abuse treatment that read as follows:
13. Undergo an evaluation to determine the nature and extent of substance abuse disorder. Treatment shall include substance abuse treatment at an inpatient facility recommended by La. Dept, of Health & Hospitals and approved by the La. Dept, of Corrections for a period of not less than four weeks, or more than six weeks.
14. Successfully perform and complete any outpatient follow up substance abuse treatment recommended by treating physician for a period not to exceed twelve months.

. The record contains no transcript of this proceeding. The minute entry from the hearing shows that Rochelle was present in court and that Daniels-Warren testified regarding the drug test.

. We do not reach the issue in this case of whether an affidavit or contemporaneous report by the officer conducting the drug test might be adequate proof via hearsay evidence of a probation violation in the absence of any direct evidence to the contrary by the defendant. The jurisprudence of the Louisiana Supreme Court prior to the enactment of La. C.E. art. 1101(B) indicates that such proof would be inadequate or a violation of defendant's confrontation rights.