PEATROSS, J.
 

 11 Defendant, Robert Todd Griffin, was initially charged under two docket numbers with attempted first degree murder, second degree battery, simple battery of the infirm, simple robbeiy, simple burgla
 
 *1042
 
 ry of an inhabited dwelling and possession of drug paraphernalia. In the instant docket number, the charges were later reduced to a single count of second degree robbery. Defendant opted for a bench trial; and, after hearing the evidence, the trial judge found Defendant guilty and then sentenced Defendant to serve 40 years’ imprisonment at hard labor. Defendant now appeals, urging three assignments of error. For the reasons stated herein, the conviction and sentence of Defendant are affirmed.
 

 FACTS
 

 Just before 4:00 a.m. on the morning of October 15, 2004, deputies from the Tensas Parish Sheriffs Office (“TPSO”) responded to a call for assistance at the residence of Mr. James Hill. Deputies David Lee and Mark Guy responded to the call and arrived at Mr. Hill’s house at the same time as the arrival of Mr. Hill’s daughter, Carolyn Crow. When the deputies arrived, they saw Mr. Hill, who was 85 years old and legally blind, standing in the carport appearing badly beaten. His pajamas were torn, his left eye was black and he had blood on his face and ear. Deputy Lee testified that, at first, Mr. Hill could only respond with “ahh-haaa, ahh-haaa” when asked what had happened; but, shortly thereafter, Mr. Hill was able to say, “He’s inside. He’s inside.” Ms. Crow took her father to her car while the deputies entered the residence to search for the suspect.
 

 | Recording to Ms. Crow, once they got into her car, her father told her that he had been awakened earlier that morning by a knock on the door. Mr. Hill related to her that a man was at his door who said that his car had broken down and wanted to use the phone to call someone to pick him up. Mr. Hill related that the man identified himself as “Mike Hale.”
 
 [1]
 
 Mr. Hill let the man into his home to use the phone. After the man got off the telephone,
 
 [2]
 
 he asked Mr. Hill where Mr. Hill kept his money. Mr. Hill responded that he did not have any money, and the man then began to beat Mr. Hill.
 

 As Ms. Crow spoke with her father, the deputies searched the house. They found that the back door was partly open. When they entered the home, they saw that a reclining chair had been turned over onto its back. As they continued to search the home, the deputies heard snoring. They found Defendant asleep on the kitchen floor. Defendant smelled strongly of alcohol and the upper portion of his back was covered with fresh feces. Deputy Lee recognized Defendant as Robert Todd Griffin, a person he knew. The deputies rolled Defendant over, handcuffed and searched him. The deputies found a wallet in Defendant’s back pocket that belonged to Mr. Hill and contained Mr. Hill’s state-issued identification card.
 
 [3]
 
 According to Ms. Crow, Mr. Hill kept his wallet on furniture near his bed or |sin a vanity drawer when he slept. In a continued search of the home, the deputies found blood spots on Mr. Hill’s bed by the pillow. Outside the home, the deputies found Defendant’s vehicle in Mr. Hill’s side yard, the portion of the yard away from the street.
 

 After the deputies arrested Defendant, they placed him into a patrol car. Deputy
 
 *1043
 
 Guy and Ms. Crow then assisted Mr. Hill back into the home and sat him in the recliner. Deputy Guy testified that Mr. Hill was “nervous, ... hurt,” dazed and walking slowly with assistance just before the interview; he was still bleeding and was being attended by paramedics. According to the testimony of Ms. Crow, her father told the deputy the same story he had just relayed to her about the incident. Deputy Guy also testified that Mr. Hill reported being knocked unconscious by the beating. Deputy Guy did not include Mr. Hill’s statements in the initial incident report, but included some of that information in a subsequent report.
 

 A toxicology report later showed that Defendant had alcohol, cocaine, Xanax and marijuana in his system when he was arrested. He was unable to sign his name when he was booked at the jail and appeared as if he had had too much to drink. A Ph.D. psychologist who subsequently interviewed Defendant and reviewed the evidence opined that Defendant’s ability to form intent or a plan would have been impaired due to Defendant’s consumption of drugs and alcohol prior to the crime, but admitted, however, that his opinion was based primarily on what Defendant told him about the incident. In addition, there was evidence which suggested that Defendant made an effort to escape from an encounter with police earlier that evening [4by leaving a bar when police were called and, further, that Defendant parked his car on the lakeside, or backside, of Mr. Hill’s house in a way calculated to escape attention.
 

 A second Ph.D. psychologist who reviewed the evidence opined that it was possible that a person who had behaved as Defendant had could have been capable of forming intent despite drug use.
 

 After several continuances requested by Defendant, trial in this matter commenced on May 5, 2008. Defendant waived trial by jury. Mr. Hill passed away prior to the trial, and his testimony had not been taken prior to his death. Just prior to trial, Defendant requested yet another continuance based upon his alleged inability to assist his lawyer due to the effects of post-surgical medications that he was taking.
 
 [4]
 
 In response to the motion, the trial judge spoke with a physician, Dr. Neumann, by telephone on May 5, 2008, the morning of trial. Dr. Neumann had examined Defendant that morning and was familiar with the medications Defendant was taking. The record contains the trial judge’s recitation of the conversation, including that Dr. Neumann had opined that Defendant would be “drowsy, but not stuporous,” and that Defendant had “a good understanding of the operation of a trial.” Defendant’s attorney and the prosecutor were present in chambers during the telephone conversation, which was not held as a conference call due to technical difficulties. Defendant’s attorney argued that, while Defendant “could probably assist me in the defense,” he might Rsuffer prejudice due to his medicated condition should he choose to testify. Ultimately, the trial judge denied Defendant’s motion for a continuance in reliance on the physician’s opinion that Defendant could go forward with the trial.
 

 During the trial, both Ms. Crow and Deputy Guy testified, over repeated objections of Defendant’s attorney and motion
 
 in limine,
 
 about Mr. Hill’s statement to them in the half hour or so after the incident. The court relied on these witnesses’ recollection of the dazed mental state of Mr. Hill and the close proximity in time of the statements to the event in
 
 *1044
 
 finding that the statements were admissible into evidence as excited utterances of Mr. Hill.
 

 Near the end of the first day of trial (May 5, 2008), the trial judge made the following observation regarding the capacity of Defendant to proceed and assist his defense counsel:
 

 I’m gonna say something for the record. I don’t think there is any objection to this. But I just think the record should reflect that Mr. Griffin, and I’m not sure what the difference is as far as his medication goes today, but he’s obviously functioning at a more alert level. And I think it’s appropi’iate for the record to say that. And, you know, if anybody wants to comment on it or make some other statement, they may. But, I think the record should reflect that from the Court’s perspective, he’s obviously assisting counsel ably and functioning without the drowsiness that appeared yesterday.
 

 There were no further comments regarding that issue.
 

 As previously stated, at the close of the evidence, the court found that Defendant was guilty of second degree robbery. In particular, the court was convinced that Defendant had the requisite intent to inflict serious bodily injury despite his drug and alcohol use. Subsequently, the court sentenced |fiDefendant to serve 40 years’ imprisonment at hard labor for this offense. Defendant now appeals.
 

 DISCUSSION
 

 Assignment of Error 1 (verbatim): Mr. Griffin was denied his 6th Amendment right to confront his accusers because a police officer was allowed to testifg as to facts not in the police report, which the officer alleged the deceased victim had told him on the night of the incident.
 

 Defendant first argues that the trial court erred by admitting the testimony of Ms. Crow and Deputy Guy relating to what Mr. Hill told them, respectively, in the car and during a subsequent interview conducted in Mr. Hill’s home after Defendant’s arrest. Defendant asserts that the statements were inadmissible hearsay and that the trial court also erred in finding the statements to be excited utterances. He further argues in his brief that, even if the statements were considered to be excited utterances, their admission into evidence violated Defendant’s right to confront his accusers.
 

 La. C.E. art. 801 provides, in part:
 

 C. Hearsay. “Hearsay” is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.
 

 D. Statements which are not hearsay. A statement is not hearsay if:
 

 [[Image here]]
 

 (4) Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
 

 |7La. C.E. art. 802 provides:
 

 Hearsay is not admissible except as otherwise provided by this Code or other legislation.
 

 La. C.E. art. 803 provides, in part:
 

 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 

 
 *1045
 
 [[Image here]]
 

 (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
 

 La. C.E. art. 804 B provides, in pertinent part:
 

 B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 

 (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception.
 

 (2) Statement under belief of impending death. A statement made by a declar-ant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.
 

 Mr. Hill’s statements were offered in part to prove the truth of the matter asserted and not just to explain the actions of police or Mr. Hill’s daughter. The statements, therefore, are hearsay. Since Mr. Hill never presented his testimony in an adversarial setting prior to his death, the exception in La. C.E. art. 804(B)(1) is inapplicable, and because there is no showing that Mr. Hill believed that his death was imminent at the time he IsSpoke to the witnesses, La. C.E. art. 804(B)(2) is inapplicable as well. Finally, the statements are not admissible as part of the res
 
 gestae
 
 because they are the statements of a participant about an event and were not integrally connected to the robbery.
 
 See, e.g., State v. Emerson,
 
 31,-408 (La.App. 2d Cir.12/9/98), 722 So.2d 373,
 
 writ denied,
 
 99-1518 (La. 10/15/99), 748 So.2d 470.
 

 In some instances, however, a victim’s statement to police made after a crime may be admissible as an excited utterance, and so the court held in the case
 
 sub judiee.
 
 For example, in
 
 State v. Lawrence,
 
 40,278 (La.App. 2d Cir.3/15/06), 925 So.2d 727, a recording of a 911 call made by a robbery victim immediately after a robbery was held admissible under the excited utterance rule.
 
 See also State v. Rhodes,
 
 29,207 (La.App. 2d Cir.1/22/97), 688 So.2d 628,
 
 writ denied,
 
 97-0753 (La.9/26/97), 701 So.2d 980, where a witness’s statements to police made immediately upon their arrival was held admissible. As this court stated in
 
 State v. Martin,
 
 39,846 (La.App. 2d Cir.8/17/05), 913 So.2d 863,
 
 writ denied,
 
 06-0110 (La.6/14/06), 929 So.2d 1267:
 

 This exception requires an occurrence or event sufficiently startling to render the declarant’s normal reflective thought process inoperative.
 
 State v. Reaves,
 
 569 So.2d 650 (La.App. 2d Cir.1990),
 
 writ denied,
 
 576 So.2d 25 (La.1991). Furthermore, the statement of the de-clarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought.
 
 State v. Henderson,
 
 362 So.2d 1358 (La. 1978).
 

 In determining whether the declarant was under stress of an excited event, the time span between the event and the statement is considered the most important factor. The trial court must determine whether the interval between the event and the statement was of sufficient duration to permit a 10subsidence of emotional upset and a restoration of a reflective thought process.
 
 State v. Jasper,
 
 28,187 (La.App. 2d Cir.6/26/96), 677
 
 *1046
 
 So.2d 553, 563,
 
 writ denied,
 
 96-1897 (La.2/21/97), 688 So.2d 521. Additional factors that may indicate that a statement was the result of a reflective thought are evidence that the statement was self-serving or made in response to an inquiry, or expansion of the excited utterance beyond a description of the event and into past or future facts, and proof that, between the event and the statement, the declarant performed tasks that required a reflective thought process. However these factors do not automatically justify exclusion,
 
 Henderson, supra; Jasper, supra.
 
 We also note that the Louisiana Supreme Court has long held that the admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial.
 
 State v. Johnson,
 
 389 So.2d 1302 (La.1980);
 
 State v. McIntyre,
 
 381 So.2d 408, 411 (La.1980), cert
 
 denied, McIntyre v. Louisiana,
 
 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).
 

 The passage of time between an event and a statement about the event is an important factor in deciding the admissibility of a statement under this exception.
 
 See, e.g., State v. Michael,
 
 39,439 (La.App. 2d Cir.1/7/05), 891 So.2d 109,
 
 writ denied,
 
 05-0354 (La.6/17/05), 904 So.2d 681, where the statements of a victim at the hospital after a stabbing “arguably may not have been made under the influence of the traumatic stabbing event because of the passage of time.... ”
 

 In the instant case, there are two sets of statements by Mr. Hill. The first statement was made to Mr. Hill’s daughter immediately after the crime while the deputies searched for a suspect, and the second statement was made 15 to 30 minutes later after Defendant had been arrested.
 

 Statements made to Ms. Crow
 

 We agree with the trial court that the statements made by Mr. Hill to his daughter constitute excited utterances and were, therefore, properly | ^admitted. Mr. Hill was initially unable to speak when his daughter arrived with the deputies, and his statements to her were made immediately after Mr. Hill was able to tell the deputies where to look for the suspect. The record shows that Mr. Hill was clearly still in a very excited state and had no time for reflective thought as he told Ms. Crow what had just happened to him. The trial court correctly concluded that Mr. Hill’s statements to his daughter while in her car qualified as excited utterances.
 

 A finding that Mr. Hill’s statements to his daughter qualify as excited utterances does not, however, end the inquiry. Although the “excited utterance” exception to the hearsay rule has been described as a “firmly rooted” exception,
 
 [5]
 

 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), holds that the confrontation clause of the Sixth Amendment acts as an absolute bar on the admission of all out-of-court testimonial evidence unless (1) the witness who made the statement is unavailable to testify in court, and (2) the defendant had a prior opportunity to cross-examine the witness.
 
 State v. Ealy,
 
 44,252 (La.App. 2d Cir.5/13/09), 12 So.3d 1052.
 

 In the instant case, the witness was unavailable to testify because he died prior to the trial, and Defendant did not have the opportunity to cross-examine Mr. Hill prior to his death. Accordingly, the admissibility of the evidence under
 
 Crawford
 
 turns upon whether it was “testimonial.”
 

 
 *1047
 
 | nThe court in
 
 Crawford
 
 declined to provide an explicit definition of testimonial evidence, but the opinion explains:
 

 An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.
 

 The fact that a statement is made to a person who is not a government officer does not, as a bright line, necessarily mean that the statement is not “testimonial” within the ambit of the Sixth Amendment. Courts have been much more reluctant, however, to find a statement made to a non-governmental officer to be testimonial. For example, in
 
 State v. Heggar,
 
 39,915 (La.App. 2d Cir.8/17/05), 908 So.2d 1245, this court found the present-sense impressions of a victim made over the telephone to a witness immediately prior to the victim’s murder to be non-testimonial in nature. There was nothing to suggest that the victim believed that his statements would ever be used for formal purposes such as a trial.
 
 See also State v. Parks,
 
 08-423 (La.App. 5th Cir.11/25/08), 2 So.3d 470,
 
 writ denied,
 
 09-0142 (La.10/2/09), 18 So.3d 101, discussing
 
 Heg-gar
 
 and similar cases.
 

 There are several risks, however, in treating all statements to non-governmental actors to be non-testimonial in nature, such as the opportunity for the government to wrongfully procure testimony from such witnesses and the “backdoor” reintroduction of the shibboleth of reliability rejected in
 
 Crawford.
 
 In this case, we find that Mr. Hill’s statements to his daughter — although they accuse Defendant of a crime — are not testimonial within the ambit of the protection of the Sixth Amendment. The elderly victim, under the immediate stress of a robbery and beating, was explaining to his | ^daughter how he came to be in his current condition. These are not the type of circumstances where an objective person in Mr. Hill’s position would believe that his statements would be used in a subsequent proceeding like a trial. Rather, Mr. Hill was explaining his urgent circumstances and distressed condition to his own daughter while waiting for paramedics to arrive. There was no formality or reflection in Mr. Hill’s statements; the suspect was still at lai’ge, presumably still a danger to others, and the elderly victim had immediate need of medical attention. Mr. Hill’s statements to his daughter were not testimonial under the circumstances of their making. Hence, under the circumstances, the trial court did not err in allowing Mr. Hill’s daughter to testify about what her father told her and in admitting this evidence to prove the truth of the matters asserted therein.
 

 Statements made to Deputy Guy
 

 The classification of Mr. Hill’s statements to Deputy Guy as excited utterances is a much closer question. In most cases, the statements made to police by a victim of a crime during an interview 15 minutes after police have arrived and arrested the suspect would not be considered to be excited utterances. Typically, a victim in those circumstances would have calmed down and had time to engage in reflective thought. The present case is more problematic, however, due to Mr. Hill’s age and condition. Mr. Hill was 85 years old, frail, nearly blind and had just been the victim of a serious beating. The witnesses described Mr. Hill as nervous, hurt and dazed at the time he made the statements to the deputy, and it appears that he was still, to a degree, under the influence of the shock and trauma of the offense. A | <;ireview of the cases applying the excited utterance exception, however, leads us to conclude that the passage of time from the statements made to the daughter in the car to the point when Mr. Hill was moved back inside the residence,
 
 *1048
 
 placed in his recliner and was answering questions of the deputy disqualifies the statements as excited utterances. We find, therefore, that the statements made to Deputy Guy were improperly admitted.
 

 We further find that Mr. Hill’s statements to the deputy were also inadmissible under
 
 Crawford, supra,
 
 as they were testimonial in nature. These statements were made to a government officer after the arrest of the suspect, and statements such as those Mr. Hill made to the deputy might be expected by an objective person to be used in a trial setting. Although the State argues that the statements to the deputy were not testimonial because they were made to enable police assistance to an ongoing emergency, that assertion is not well supported by the facts. Defendant was under arrest when the statements were made and the statements were offered, in part, to prove that Defendant beat Mr. Hill and took his property. Thus, Mr. Hill’s statements to police were “testimonial” within the meaning of
 
 Crawford.
 

 Confrontation rights claims, however, are subject to harmless error analysis.
 
 State v. Ealy, supra, citing Delaware v. Van Arsdall,
 
 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986);
 
 State v. Robinson,
 
 01-0273 (La.5/17/02), 817 So.2d 1131. The inadmissible testimony of Deputy Guy was largely cumulative of the admissible testimony of Mr. Hill’s daughter. Ms. Crow’s testimony proved that Defendant was the person who beat Mr. Hill and that the beating was concomitant with the robbery. Moreover, |14the circumstantial evidence in this case was simply overwhelming. In this regard, we note that the defense at trial focused primarily on Defendant’s ability to form the requisite mental state due to his intoxication at the time of the offense, not that Defendant did not commit the offense.
 

 In summary, although the trial court erred in some respects in its handling of these evidentiary matters, the admissible evidence was sufficient to prove Defendant’s guilt beyond a reasonable doubt, and any error in the admission of the cumulative hearsay evidence was harmless beyond a reasonable doubt. Accordingly, this assignment of error is without merit.
 

 Assignment of Error 2 (verbatim): Mr. Griffin was denied his 6th Amendment right to a fair trial because he was forced into trial under the influence of medication which prevented him from following the proceedings and assisting his lawyer.
 

 Assignment of Error 3 (pro-se, verbatim) The Appellant was denied his right to a contradictory hearing pursuant to La. C.Cr.P. art. 647 and to have all conferences recorded pursuant to La.C.Cr.P. art. 843 during a motion to continue based on Mr. Griffin’s mental competence.
 

 Defendant argues that the trial court should have granted his motion to continue the trial because he was incapable, due to his medication regimen, of assisting his attorney with his defense. He further argues that the record is inadequate to review the trial court’s findings on this issue.
 

 La.C.Cr.P. art. 641 provides: Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.
 

 The two-fold test of capacity to stand trial is whether the defendant: (1) understands the consequences of the proceedings, and (2) has the ability to | ^assist in his defense by consultation with counsel.
 
 State v. Bridgewater,
 
 00-1529 (La.1/15/02), 823 So.2d 877,
 
 cert. denied,
 
 537 U.S. 1227, 123
 
 *1049
 
 S.Ct. 1266, 154 L.Ed.2d 1089 (2003). While a court may receive the aid of expert medical testimony on the issue of competency to proceed, the ultimate decision of capacity rests with the trial court.
 
 Id.
 
 The defendant has the burden of proving, by a preponderance of the evidence, his incompetence to stand trial.
 
 State v. Frank,
 
 96-1136 (La.10/4/96), 679 So.2d 1365.
 

 The record in this case demonstrates that the trial judge gave thoughtful consideration to Defendant’s request for a continuance based upon his mental condition. The court had Defendant questioned by a physician on the morning before trial began, and the court then conferred with the physician by telephone. Defendant’s primary objection to proceeding with the trial was his fear that, if he testified, he might suffer prejudice due to his being medicated. In fact, Defendant’s attorney expressed some confidence that Defendant could assist in the conduct of the trial. Although there is no transcript of the conversation between the physician and the trial judge, the record reflects that Defendant’s attorney heard parts of the conversation when repeated out loud by the trial judge during the telephone conversation. In addition, we note that Defendant’s attorney was able to assist the court in recalling what the doctor had said during that telephone conversation.
 

 We conclude that the record is adequate to show that the trial court’s decision is supported by the evidence available to the court at the time the | ^decision was made. Further, the record shows that the court’s decision was correct; the examining physician’s opinion was that Defendant would be drowsy, but not stuporous, during the trial. The trial judge had the opportunity to examine Defendant personally and decide whether he was competent to proceed. In addition, as quoted earlier in this opinion, the trial judge observed Defendant throughout the trial and noted for the record at the end of the first day that Defendant appeared not to be as drowsy as he had been the day before and had been assisting his attorney.
 

 Finding the decision of the trial judge to proceed with the trial to be correct and because the record is adequate to review that decision, we conclude that these assignments of error are without merit.
 

 CONCLUSION
 

 For the foregoing reasons, the conviction and sentence of Defendant, Robert Todd Griffin, are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . This is a person who, along with Defendant, had done some work at the victim’s property in the past.
 

 [2]
 

 . Defendant called his mother to come and pick him up. His mother traveled to Mr. Hill’s home, but no one answered the door when she arrived, so she left.
 

 [3]
 

 .While Defendant was in jail, his mother retrieved Defendant's belongings; among the belongings was a watch that belonged to Mr. Hill.
 

 [4]
 

 . Defendant was not incarcerated pending trial. He was under house arrest and had undergone surgery. At the time of trial, Defendant was taking prescribed drugs, including Lorcet, Xanax, Zoloft and Trazedone.
 

 [5]
 

 .
 
 Crawford
 
 criticized the “firmly rooted” distinction. See also
 
 Giles v.
 
 California,-U.S. -, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), for a discussion of die historical foundations of exceptions to the hearsay bar.