891 So.2d 109 (2005)
STATE of Louisiana, Respondent,
v.
Larry Britton MICHAEL, Applicant.
No. 39,439-KA.
Court of Appeal of Louisiana, Second Circuit.
January 7, 2005.
*110 Culpepper & Carroll, PLLC by Bobby L. Culpepper, Jonesboro, for Applicant.
Robert W. Levy, District Attorney, Stephen K. Hearn, Jr., Laurie Whitten, Assistant District Attorneys, for Respondent.
Before STEWART, CARAWAY and DREW, JJ.
CARAWAY, J.
In this probation revocation proceeding, the defendant was found to have violated a condition of probation when he stabbed his wife. The evidence which established the crime was the out-of-court statement given by the defendant's spouse to an officer at a hospital following the stabbing incident and the testimony of the victim's daughter corroborating defendant's abusive conduct on the night of the stabbing. Nevertheless, the victim's daughter did not actually see the stabbing, and the defendant's wife refused to testify at the probation revocation hearing because of her marital privilege. Following the trial court's revocation of probation, defendant appeals, arguing that the probation violation was established through the impermissible hearsay statement of his wife. *111 Finding the evidence sufficient to revoke probation, we affirm the ruling of the trial court.

Facts
After the defendant, Larry Britton Michael ("Michael"), spilled alcohol on his wife, Mattie Michael, and lit a cigarette in close proximity to her, setting her on fire, he was charged with attempted second degree murder in 2000. Michael pled guilty to aggravated battery in 2001, as the result of Mattie's refusal to give testimony against him through her invocation of the spousal privilege.[1] For the conviction Michael received a suspended sentence of seven years at hard labor and was placed on five years probation, at least three years of which were to be supervised. The court imposed specific conditions of probation prohibiting the violation of a domestic abuse order which prohibited Michael from contacting or visiting Mattie at her home or work as well as general prohibitions against further criminal conduct. Later, after the victim's continued requests, the trial court modified the "no contact" provisions of probation to permit contact between them.
On December 21, 2003, Michael was again arrested for the attempted second degree murder of Mattie who was found stabbed in her home. Prior to his trial on that charge, the state filed a petition seeking to revoke Michael's probation on the ground that he violated provision one of his probation which read as follows:
1. Refrain from violating any law, specifically any Federal, State, Parish or Municipal.
At the revocation hearing, police captain Darrel Newsom testified that on December 21, 2003, he was dispatched to 601 Woodland Street in Ruston in response to the report of a stabbing. Defense counsel objected to the hearsay nature of the response, which was overruled by the court. Counsel then made a general objection to all hearsay testimony.
Captain Newsom testified that the victim had been transported to the hospital at the time of his arrival at the scene. He found the residence in disarray, with dead fish and water all over the floor from a broken aquarium. He collected two kitchen knives and a bloody paper towel from the residence. Captain Newsom further stated he went to the hospital and interviewed Mattie, who told him that her husband had come to the house enraged, struck her in the head with an ashtray, and then stabbed her in the stomach.
Corporal Clint Williams testified that in response to the stabbing call, he found Mattie Michael in the bathroom with an apparent stab wound. Two children, later identified as Ashley Tyler, the fourteen-year-old daughter of Mattie, and Larry, the probationer's child, were present. Corporal Williams took a statement from Ashley in which she related that she and her half-brother were asleep, and she was awakened by her mother calling her. She then saw her mother bleeding. The officer asked her who she thought had done this to her mother, and she indicated that she thought it was Michael.
Corporal Williams also participated in the arrest of Michael at his sister's house in Grambling, Louisiana. He seized clothing which the probationer's sister had indicated that Michael was wearing when he came to her residence. The clothing appeared to be bloodstained, although there *112 was no evidence identifying whose blood was on the clothing.
Ashley testified that she and her brother were asleep together when she got up to use the restroom and found her mother injured in the bathroom. Ashley testified that her mother told her that Michael had been there, had been in a rage, and had knocked over the fish tank. Mattie told Ashley to call the police and tell them to send an ambulance. Notably, she did not tell Ashley how she got stabbed. Ashley went across the street to call the police, because the phones were "unhooked."
Ashley initially testified that Michael did not return to the residence. Upon being confronted with her contrary statement to police, she then testified that Michael had returned before she called police. Upon being asked what had happened, she testified that she had witnessed Michael throw the TV down and jerk the phones out of the wall.
Upon Mattie's call to testify, she invoked her spousal privilege not to testify against Michael.
After considering this evidence, the trial court determined that the state had presented sufficient evidence to merit Michael's probation revocation. Specifically, the court was persuaded by the direct evidence showing Michael's presence at Mattie's home exhibiting violent behavior on the night when she was found stabbed. The court also considered the statements made by Mattie to Captain Newsom to fall within the excited utterance exception to the hearsay rule under La. C.E. art. 803(2). From that evidence, the court ordered revocation of Michael's probation and instituted the original sentence with credit for time served.
On appeal, Michael argues that the trial court erred in revoking his probation solely on evidence of a "mere arrest" and hearsay evidence related to that arrest.

Discussion
The U.S. Supreme Court jurisprudence extends limited due process protection to the parolee or probationer, and the revocation hearing is considered an informal, flexible proceeding, not a stage of criminal prosecution. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). Therefore, "the full panoply" of the constitutional rights afforded the defendant in the criminal proceedings are not provided the probationer. Morrissey v. Brewer, supra; Gagnon v. Scarpelli, supra.
Proof of an arrest alone, without any evidence of the conduct that led to arrest, does not suffice to revoke probation. State ex rel. Smith v. Louisiana, 03-3464 (La.10/7/04), 885 So.2d 512. At a hearing to revoke probation concerning the defendant's commission of another offense, the state is required to prove that the defendant committed or has been convicted of a felony, or that the defendant has been convicted of a misdemeanor offense. La. C. Cr. P. art. 901; State v. Harris, 368 So.2d 1066 (La.1979). Additionally, the court may revoke probation if it decides that the defendant was about to violate his probation through the commission of an offense or otherwise. La. C. Cr. P. art. 900.
Louisiana courts have interpreted Article 900 of the Criminal Code[2] to vest the *113 trial judge with wide discretion when a condition of probation is violated and have held that the legislature intended punishment for probation violations to be tailored to the facts of the case, the seriousness of the misdeed, and the needs of the probationer. State v. Sussmann, 374 So.2d 1256 (La.1979); State ex rel Robertson v. Maggio, 341 So.2d 366 (La.1976). Likewise, this provision is interpreted as providing for an informal and summary hearing. State v. Lucas, 385 So.2d 253 (La.1980). Nevertheless, the Code of Criminal Procedure clearly contemplates that the defendant be given an opportunity to explain mitigating circumstances relating to the violation before the judge decides on whether to revoke probation. Id.
The burden of proof in a probation revocation hearing is not as great as that required to convict a person of a crime. Yet, the United States Supreme Court in Morrissey v. Brewer, supra, observed that the revocation hearing "must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." Id. at 408 U.S. 488, 92 S.Ct. 2593. The federal courts have held that evidence that would establish guilt beyond a reasonable doubt is not required in order for the court to revoke probation. United States v. Grandlund, 71 F.3d 507 (5th Cir.1995), cert. denied, 516 U.S. 1152, 116 S.Ct. 1031, 134 L.Ed.2d 108 (1996); United States v. Burkhalter, 588 F.2d 604 (8th Cir.1978); United States v. Waldron, 306 F.Supp.2d 623 (E.D.La.2004). The federal courts have utilized a preponderance of the evidence standard of proof. United States v. Cofield, 233 F.3d 405 (6th Cir.2000), cert. denied, 532 U.S. 952, 121 S.Ct. 1424, 149 L.Ed.2d 364 (2001); United States v. Bujak, 347 F.3d 607 (6th Cir.2003). Additionally, the federal courts have allowed revocation of probation when the evidence and facts are such as to reasonably satisfy the judge that the probationer's conduct has not been as required by the conditions of probation. United States v. Guadarrama, 742 F.2d 487 (9th Cir.1984); United States v. Francischine, 512 F.2d 827 (5th Cir.1975), cert. denied, 423 U.S. 931, 96 S.Ct. 284, 46 L.Ed.2d 261 (1975); United States v. Carrion, 457 F.2d 808 (9th Cir.1972); United States v. Waldron, supra.
In probation revocation proceedings, traditional rules of evidence generally do not apply. Pennsylvania Bd. of Probation and Parole v. Scott, supra. This is reflected in the Louisiana Code of Evidence. Article 1101 of the Code provides in pertinent part:
B. Limited applicability. Except as otherwise provided by Article 1101(A)(2) and other legislation, in the following *114 proceedings, the principles underlying this Code shall serve as guides to the admissibility of evidence. The specific exclusionary rules and other provisions, however, shall be applied only to the extent that they tend to promote the purposes of the proceeding.
(1) Worker's Compensation cases.
(2) Child custody cases.
(3) Revocation of probation hearings.
(4) Preliminary examination in criminal cases, and the court may consider evidence that would otherwise be barred by the hearsay rule.
* * *
C. Rules inapplicable. Except as otherwise provided by Article 1101(A)(2) and other legislation, the provisions of this Code shall not apply to the following:
* * *
(4) Sentencing hearings except as provided in Code of Criminal Procedure Article 905.2 in capital cases.
Recently, in State v. Rochelle, 38,633 (La.App.2d Cir.6/23/04), 877 So.2d 250, this court reviewed the allowance of hearsay evidence in probation revocation proceedings as sanctioned by La. C.E. art. 1101(B) and the Louisiana and federal jurisprudence. The particular hearsay evidence at issue was that which would otherwise not be admissible in an adversarial criminal trial as an exception to the hearsay exclusionary rule under the Code of Evidence. In Rochelle, we found that such hearsay evidence may nevertheless be considered in a probation revocation proceeding so long as such evidence exhibits some degree of reliability and trustworthiness. In conjunction with other admissible evidence, that hearsay evidence may demonstrate the fact of a probation violation. One probation violation at issue in Rochelle rested on the combination of such hearsay and other evidence and was affirmed, while another violation, resting only on inadmissible hearsay, was not.
Because such hearsay evidence is allowed in probation revocation hearings, the probationer's confrontation right is not the same as the right guaranteed by the Sixth Amendment in a criminal trial. However, this limited due process impact on the right of confrontation is clearly supported by the analogous United States Supreme Court determinations that the double jeopardy protection of the Fifth Amendment, the exclusionary rule protection for the Fourth Amendment, and the right to counsel of the Sixth Amendment are not guarantees within the informal and flexible revocation proceeding. Johnson v. United States, 529 U.S. 694, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000); Pennsylvania Bd. of Probation and Parole v. Scott, supra; Gagnon v. Scarpelli, supra. The federal courts have also held that the Miranda protection for the Fifth and Sixth Amendment rights are not guarantees within the revocation proceedings. United States v. Johnson, 455 F.2d 932 (5th Cir.1972), cert. denied, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972). Indeed, in Gagnon v. Scarpelli, 411 U.S. at 782, fn. 5, 93 S.Ct. 1756, the court stated that letters, affidavits and other hearsay documents, which are not admissible under exceptions to the hearsay rule and which technically defeat the right to confront the out-of-court declarant, may be nevertheless considered for the purpose of revocation.
Notably, the high court has further bolstered the right of confrontation in the criminal trial setting by its recent ruling in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The case, like the present situation, involved the assertion of a marital privilege by a *115 spouse whose out-of-court statements were used as evidence for the conviction. The court rejected the use by the lower court of such hearsay evidence. Nevertheless, in subsequent decisions reviewing Crawford, federal and state courts have determined that the ruling has no application to bar such hearsay in revocation proceedings. United States v. Aspinall, 389 F.3d 332 (2d Cir.2004); United States v. Barraza, 318 F.Supp.2d 1031 (S.D.Cal.2004); United States v. Martin, 382 F.3d 840 (8th Cir.2004); Marsh v. State of Indiana, 818 N.E.2d 143 (Ind.App.2004).
Accordingly, because of La. C.E. art. 1101(B) and the above jurisprudence, Michael may not simply argue that his wife's statements at the hospital to Captain Newsom do not qualify as an excited utterance within the exception to the hearsay rule under La. C.E. art. 803(2).[3] Those statements arguably may not have been made under the influence of the traumatic stabbing event because of the passage of time and therefore may not fall within an exception to the hearsay rule. Nevertheless, irrespective of the answer to that question, we find that Mattie's out-of-court statement used by the trial court constitutes reliable hearsay because of the circumstances under which it was obtained and its nearness in time to the stabbing. The statement therefore may be considered in the flexible setting for this probation revocation. Her hospital statement that Michael stabbed her coupled with the strong circumstantial implications of his rampage through Mattie's residence, as established by Ashley's direct testimony, sufficiently established that Michael's actions amounted to criminal conduct. The trial court could reasonably conclude that Michael committed a felony in violation of the condition of his probation.
Accordingly, the trial court's revocation of the defendant's probation is affirmed.
AFFIRMED.
NOTES
[1] Prior to accepting Michael's plea, the trial court interrogated Mattie outside the presence of the defendant, with his consent and with his counsel present, to determine that she was not going to testify and was agreeable to her husband remaining free and on supervised probation.
[2] La.C.Cr.P. art. 900 provides, in pertinent part:

A. If the court decides that the defendant has violated, or was about to violate, a condition of his probation it may:
* * *
(5) Order that the probation be revoked. In the event of revocation the defendant shall serve the sentence suspended, with or without credit for the time served on probation in the discretion of the court. If the imposition of sentence was suspended, the defendant shall serve the sentence imposed by the court at the revocation hearing.
* * *
D. When a court considers the revocation of probation, the court shall consider aggravating and mitigating circumstances in the case, including but not limited to the circumstances stated in Article 894.1. If the court revokes the probation of the defendant, the court shall issue oral or written reasons for revocation which shall be entered into the record. The oral or written reasons for revocation shall state the allegations made by the probation officer concerning a violation or threatened violation of the conditions of probation, the findings of the court concerning those allegations, the factual basis or bases for those findings, and the aggravating circumstances, or mitigating circumstances, or both, considered by the court.
[3] It may also be argued under Article 801(D)(4) that the subject statement is not hearsay as it constituted an event speaking for itself under the immediate pressure of the occurrence, through the impulsive and spontaneous words of one of the participants which are necessary incidents of the criminal act or immediate concomitants of it, or form in conjunction with it one continuous transaction.