NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 11-1041

STATE OF LOUISIANA

VERSUS

MARK JAMES SAVOY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07-K-0206-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

AFFIRMED.

Earl B. Taylor
District Attorney
Jennifer M. Ardoin
Assistant District Attorney
Twenty-Seventh Judicial District
P. O. Drawer 1968
Opelousas, LA 70571
(337) 948-0551
COUNSEL FOR APPELLEE:
       State of Louisiana

**Suzanne M. deMahy**
**Public Defender's Office**
**P.O. Box 11742**
**NewIberia, LA 70562**
**(337) 296-1006**
**COUNSEL FOR DEFENDANT/APPELLANT:**
　　**Mark James Savoy**

**Mark James Savoy**
**C.P.D.C.**
**1415 Hwy. 520**
**Homer, LA 71040**
　　*Pro Se*

**PETERS, J**

On March 16, 2007, the State of Louisiana (state) initially charged the defendant, Mark James Savoy, by bill of information with three counts of aggravated kidnapping, violations of La.R.S. 14:44; and two counts of domestic abuse battery, violations of La.R.S. 14:35.3. Thereafter, on May 17, 2007, the state amended the bill of information to reduce the three aggravated kidnapping offenses to simple kidnapping, violations of La.R.S. 14:45; and to dismiss one of the two counts of domestic abuse battery. On November 7, 2007, the state again amended the bill of information to dismiss the remaining domestic abuse charge and to add a charge of aggravated flight from an officer, a violation of La.R.S. 14:108.1. Finally, on August 12, 2009, the state amended the bill of information to change the simple kidnapping offenses to second degree kidnapping, violations of La.R.S. 14:44.1. The charges, as they existed under the August 12, 2009 amendments to the bill of information, finally went to trial by jury on February 1, 2011. The jury found the defendant guilty of one count of second degree kidnapping, not guilty of the remaining two counts, and guilty of the single count of aggravated flight from an officer.

On June 16, 2011, the trial court sentenced the defendant to serve twelve years at hard labor, without the benefit of parole, probation, or suspension of sentence, on the second degree kidnapping conviction and sentenced the defendant to serve two years at hard labor on the aggravated flight from an officer conviction. The trial court ordered that the sentences run concurrently. After the trial court rejected his motion to reconsider the sentences, the defendant perfected this appeal. For the following reasons, we affirm the convictions in all respects.

1

**DISCUSSION OF THE RECORD**

The victim in these offenses is the defendant's estranged wife. The state asserts that in mid-afternoon of December 28, 2006, the defendant went to the Eunice, Louisiana, home of his wife, pulled her naked from her bath, and initially threatened to kill himself with a handgun. Instead of shooting himself, he dragged his naked wife outside and threw her into his car. Thereafter, the defendant, with his estranged wife and her two minor daughters in his custody, led police officers in a high-speed chase, initially on the roads and highways of Opelousas, Louisiana, and St. Landry Parish, Louisiana, but finally onto Interstate Highways 49 and 10 (at times, the speed of the chase exceeded 120 miles per hour). He finally stopped his vehicle when he reached the Atchafalaya Basin Bridge on I-10. There he left his vehicle and its occupants, jumped from the bridge, and escaped into the swamp. He was apprehended on January 17, 2007.

The record establishes that police officers became involved when Dianne Willingham, a shift supervisor for the St. Landry Parish 911 Call Center, received a 911 call at approximately 3:57 p.m. on December 28, 2006. According to Ms. Willingham, the call originated from a cellular telephone registered to the defendant, and, initially, only a screaming woman could be heard. Although she never had a conversation with the woman on the other end of the telephone, the cellular telephone remained "open," and Ms. Willingham was able to track it using the "Geolynx System" (System) in the 911 Call Center.

According to Ms. Willingham, the System established that the 911 call originated at a point on U.S. Highway 190 near its intersection with Louisiana Highway 367 in Opelousas, St. Landry Parish, Louisiana. For the next hour and

2

one-half, Ms. Willingham was able to pinpoint the location of the cellular telephone using the System.

Ms. Willingham recorded the entire 911 call, and it was played to the jury at trial. While it contains no direct conversation between Ms. Willingham and anyone in the defendant's vehicle, the screams and emotional pleas of the victim and her children can be heard, as can the defendant's responses and threats to the occupants of the vehicle.

Opelousas Police Department Sergeant Loretta Etienne received a call from her dispatcher concerning a possible disturbance in a vehicle traveling East on U.S. Highway 190. She quickly located the vehicle and determined that it was registered to the defendant. Sergeant Etienne activated her emergency lights and siren, but the defendant refused to respond. She then pulled up next to the vehicle and observed a woman and child in the back seat. Sergeant Etienne testified that the defendant ignored her attempts to get his attention.

In order to keep up with the defendant, she accelerated to speeds in excess of 110 miles per hour. She stopped pursuit when the defendant swerved off the main highway, over the embankment, onto the service road, and then back onto the main highway. According to Sergeant Etienne, she stopped the pursuit because she was concerned for her own safety. At this point, however, other police vehicles took up the chase.

Opelousas Police Department Patrol Officer Herbert Levier responded to radio traffic from Sergeant Etienne and joined other law enforcement vehicles in pursuit of the defendant's vehicle as it traveled South on I-49. Despite the combined emergency lights and sirens of all these vehicles, the defendant refused to stop. According to Officer Levier, the chase reached speeds up to 120 miles per

3

hour and included at least one instance when the defendant crossed over to the service road and reentered the main highway. When the defendant reached I-49's intersection with I-10, the defendant exited I-49 and started East on I-10. The defendant finally stopped his vehicle once he reached the first Atchafalaya Basin bridge, jumped from the car, leaped over the bridge rail, and made his escape into the swamp. According to Officer Levier, the still-naked victim and her two children were found in the back seat of the vehicle. The victim gave a written statement to the officers at the scene.

The victim's statement was read to the jury at trial. Basically, the statement asserted that the victim had been taking a bath when the defendant came to her home. Initially, he told her he was going to kill himself and put a gun to his head. He then grabbed the victim, took her purse and car keys, and dragged her from the house. She was still naked when he threw her into the back seat of the car and her two daughters jumped in with her. The victim then removed her cellular telephone from her purse and dialed 911. After doing so, she tossed the cellular telephone into the trunk through the back seat access. As they travelled, the defendant threatened to kill all of them by either driving into a tree or by hitting another vehicle head on. She begged him to allow her children out of the vehicle.

The victim's statement was used because, when called at trial to testify, she declared: "I don't wanna answer nothing. I don't wanna testify. I don't wanna answer." She denied remembering the incident and even denied remembering being married to the defendant. She refused to look at her written statement, much less identify it as her statement. It was at this point that the state offered the written statement over the objection of the defendant. Based partly on Officer's

4

Levier's testimony that he was present when the victim wrote and signed the statement, the trial court allowed it to be admitted.

Eunice Police Department Detective Ronnie Whaley, a juvenile officer, was called to the scene at the Atchafalaya Basin Bridge because of the presence of the two juveniles. He testified that he followed the victim and her two children to the Eunice Police Department, where the victim gave a second written statement. According to Detective Whaley, the second written statement was consistent with the verbal rendition of the events she had given before writing the statement. When published to the jury, it contained a more detailed description of the events that took place that afternoon.

During the series of events occurring after the end of the chase, Detective Whaley also observed a bald spot on the victim's head. When he discussed it with her, the victim told him that the defendant had pulled her hair out during the incident.

Detective Whaley acknowledged, however, that during the victim's interview, the older daughter chided her mother, stating "that she was lying, it did not happen like that." Additionally, he acknowledged that the day after the incident the victim became uncooperative and refused to allow him to interview her daughters.

Finally, the defendant's mother testified on behalf of her son and, in the course of her testimony, identified a statement allegedly written by the victim. Basically, the statement suggested that the police officers threatened to take her children from her if she did not testify against the defendant and, despite this threat, she still refused to press charges or testify. The defendant's mother testified

5

that the victim also acknowledged to her that she wrote the statement and signed it willingly.

In his appeal, the defendant asserts in his one counsel-filed assignment of error that the trial court denied him his constitutional right to confront and cross-examine his accuser by allowing the use of the victim's statements in lieu of her testimony. In three *pro se* assignments of error, the defendant asserts that (1) the evidence was not sufficient to sustain his convictions; (2) the trial court erred in denying his motion to quash the bill of particulars based on the state's failure to bring the matter to trial within the time limitations of La.Code Crim.P. art. 578; and (3) he was denied effective assistance of counsel.

## ERROR PATENT ANALYSIS

Louisiana Code of Criminal Procedure Article 920(2) requires that we review all appeals for errors that are "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." Having performed that review in this matter, we find no errors that require addressing on appeal.

## *PRO-SE* ASSIGNMENT OF ERROR NUMBER ONE

We will first address the defendant's *pro se* assignment of error that addresses the sufficiency of the evidence because, should there be merit to the assignment, the defendant could be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970 (1981), and *State v. Hearold*, 603 So.2d 731 (La.1992), and the remaining assignments of errors would be moot.

The defendant asserts that no direct evidence exists to support his commission of the offenses for which he has been convicted. He asserts that the convictions were based solely on circumstantial evidence without any

corroboration and that the state failed to prove each element of the offenses beyond a reasonable doubt.

The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

With regard to the use of circumstantial evidence, in *State v. Martin*, 11-32, p. 8 (La.App. 3 Cir. 6/1/11), 66 So.3d 608, 615, *writ denied*, 11-1441 (La. 12/16/11), 76 So.3d 1201, this court noted:

> "Circumstantial evidence consists of proof of collateral facts and circumstances from which elemental factors may be inferred according to reason, experience and common sense." *State v. Burns*, 441 So.2d 843, 845 (La.App. 3 Cir.1983).

> The statutory rule in evaluating the sufficiency of circumstantial evidence is, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. The Louisiana Supreme Court has explained the "hypothesis of innocence" stating:

> > Consequently, before a trier of fact can decide the ultimate question of whether a reasonable hypothesis of innocence exists in a criminal case based crucially on circumstantial evidence, a number of preliminary findings must be made. In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what

7

reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

*State v. Johnson*, 09-231, p. 6 (La.App. 3 Cir. 11/4/09), 21 So.3d 1159, 164, *writ denied*, 09-2643 (La.5/21/10), 36 So.3d 230 (quoting *State v. Chism*, 436 So.2d 464, 469 (La.1983)).

The defendant was convicted of second degree kidnapping. In pertinent part, the offense is defined as:

A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
. . . .

(3) Physically injured or sexually abused;
. . . .

(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.

B. For purposes of this Section, kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another[.]

Louisiana Revised Statutes 14:44.1.

The offense of aggravated flight from an police officer is provided for in La.R.S. 14:108.1. That statute reads, in pertinent part, as follows:

C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.

8

D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or watercraft commits at least two of the following acts:

(1) Leaves the roadway or forces another vehicle to leave the roadway.

. . . .

(3) Exceeds the posted speed limit by at least twenty-five miles per hour.

. . . .

(6) Fails to obey a traffic control signal device.

Considering the evidentiary record already discussed and applying the *Jackson* standard to that review, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, we find no merit in this assignment of error. In reaching this conclusion, we note the following with regard to each offense.

### *Second Degree Kidnapping*

To convict the defendant of this offense, the state was required to establish, beyond a reasonable doubt, that the defendant forcibly seized and carried his victim from one place to another, and that either he was armed with a dangerous weapon or his victim was injured, or both. Clearly, the state met its burden of proof on this offense.

In her written statements, the victim stated that the defendant forced her to accompany him, first while armed with a handgun and then with both physical violence and threats of physical violence. To suggest that she went voluntarily, while completely naked, lacks any believability. Additionally, La.R.S. 14:2(A)(3) defines a dangerous weapon as "any . . . instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." The evidence establishes that the defendant operated his vehicle on the highways at speeds in

9

excess of 120 miles per hour and that he recklessly left the main highway on more than one occasion. Additionally, the victim's statement asserts that the defendant threatened to kill her and her children by striking a tree or another vehicle at a high rate of speed. The supreme court has noted that an instrumentality may qualify as a dangerous weapon not solely because of the inherent danger it poses, but also because the instrumentality is used in a manner likely to result in death or grave bodily harm. *State v. Bonier*, 367 So.2d 824 (La.1979).

The defendant asserts in his brief that the victim's refusal to testify and the written statement she gave to his mother established his innocence of second degree kidnapping. We note, however, that the subsequent statement did not refute the facts as related in her written statement given to the police. Additionally, her refusal to testify did not somehow counter her prior statement that the defendant forced her into the car under a threat of harm. If this were the case, she simply would have testified accordingly. The circumstantial evidence in this case did not create a hypothesis of innocence, and the state met its burden of proof.

### Aggravated Flight From an Officer

The state's burden in this charge was to prove, beyond a reasonable doubt, that there was a reasonable basis for a police officer or officers to believe that the defendant had committed, was committing, or was about to commit an offense; that he then intentionally refused to stop his vehicle after being given a visual and audible signal to stop by a police officer; and that he failed to do so where human life was endangered. La.R.S. 14:108.1

Certainly, a rational trier of fact could conclude that the police officers had a reasonable basis to believe that an offense was being committed when confronted with the 911 call to the St. Landry Parish Call Center. *See* La.Code Crim.P. art.

10

215.1(A). Additionally, both Sergeant Etienne and Officer Levier testified that they attempted to pull the defendant over, signaling him to do so with their police unit lights and sirens. Sergeant Etienne testified that the defendant reached speeds of 115 miles per hour during her participation in the chase, and Officer Levier described a chase sometimes exceeding 120 miles per hour. Additionally, both officers testified to instances where the defendant left the main highway, traversed the embankment separating the highway from the service road, and then returned to the highway. Furthermore, evidence of flight and attempt to avoid apprehension is a circumstance from which a jury may infer guilty knowledge. *State v. Gatti*, 39,833 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, *writ denied*, 05-2394 (La. 4/17/06), 926 So.2d 511. Finally, the defendant's careless operation of the car endangered everyone nearby: the victim, her two children, other drivers on the highways, and the police officers themselves.

We find no merit to this assignment of error.

### DEFENDANT'S COUNSEL'S ASSIGNMENT OF ERROR

The defendant argues, in the one assignment of error filed by his counsel, that the trial court erred when it allowed the admission of the victim's two out-of-court statements because they were inadmissible hearsay; and that he was deprived of his Sixth Amendment right to confront and cross-examine his accuser.

> The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings. *See Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965). The confrontation clause of our state constitution specifically and expressly guarantees each accused the right "to confront and cross-examine the witnesses against him." *See* La. Const. art. 1, § 16, titled "Right to a Fair Trial."
>
> Confrontation means more than being allowed to confront the witnesses physically. "The main and essential purpose of

11

confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 J. WIGMORE, EVIDENCE § 1395, p. 123 (3d ed.1940)). Cross-examination is the principal means by which believability and truthfulness of testimony are tested. Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness. *See Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. at 1110; *State ex rel. Nicholas v. State*, 520 So.2d 377, 380 (La.1988); *State v. Hillard*, 398 So.2d 1057, 1059-1060 (La.1981).

*State v. Robinson*, 01-273, pp. 5-6 (La. 5/17/02), 817 So.2d 1131, 1135 (footnote omitted).

Louisiana Code of Evidence Article 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Clearly, both of the victim's written statements are hearsay. Louisiana Code of Evidence Article 802 provides that "[h]earsay is not admissible except as otherwise provided by this Code or other legislation." In arguing that the statement was properly admitted, the state relies on the exceptions to the hearsay rule found in La.Code Evid. arts. 804(A)(2) and 803(1) and (2).

Louisiana Code of Evidence Article 804(A)(2) addresses the situation where the witness is unavailable to testify and it reads as follows:

> **A. Definition of unavailability**. Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
> . . . .
>
> (2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so[.]

In response, the defendant relies on the holding in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), which bars admission of all out-of-court

testimonial statements unless the witness who made the statement was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.

While the defendant agrees that technically, the victim was unavailable because she refused to testify, he argues that he had no prior opportunity to cross-examine her and, therefore, the requirements of *Crawford* were not satisfied. The state argues, however, that defendant did have an opportunity to cross-examine the victim at trial but chose not to do so. Specifically, the state points to the fact that when the victim refused to testify, defense counsel was provided the opportunity to cross-examine her, but declined with the statement "No comments, no objections in regards to her still being under the rule and I do not have any questions."

We agree with the defendant that the state cannot rely on La.Code Evid. art. 804(A)(2). In reaching that conclusion, we note that the trial court did not specifically find the victim unavailable nor did the trial court order the victim to testify.

Nor do we find that the state can rely on the exceptions set forth in La.Code Evid. art. 803(1) and (2), which read as follows:

> The following are not excluded by the hearsay rule even though the declarant is available as a witness:
>
> **(1) Present sense impression**. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
>
> **(2) Excited utterance**. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In *State v. Griffin*, 45,045 (La.App. 2 Cir. 1/27/10), 30 So.3d 1039, *writ denied*, 10-447 (La. 9/17/10), 45 So.3d 1043, the appellate court found a statement made by a victim to his daughter shortly after the crime was committed was admissible at trial as an excited utterance when the victim had died prior to trial,

13

but that a statement given to a police officer fifteen minutes later was inadmissible hearsay.

In *Griffin,* the police arrived at the beaten victim's home simultaneously with his daughter. The eighty-five-year-old victim was standing outside, and although he could not speak initially, he eventually was able to tell the police the perpetrator was still in the house. The victim and his daughter sat in the police unit while the police searched the house. As they waited, the victim described to his daughter what happened to him and who committed the offense against him.

After the defendant was found in the house and taken into custody, the victim's daughter and one officer moved the victim into the house and seated him in a recliner. Here, the victim repeated the event to the officer. However, prior to trial, the victim died from an unrelated cause. The statements made to the daughter and the officer were admitted into evidence. The defendant argued that his Sixth Amendment right to confront his accuser was violated because the daughter and the officer testified as to what the victim said on the night of the incident, even though the trial court deemed the statements excited utterances pursuant to the exception provided by La.Code Evid. art. 803. The second circuit did not agree as to the officer's testimony. The second circuit noted:

> In some instances, however, a victim's statement to police made after a crime may be admissible as an excited utterance, and so the court held in the case *sub judice*. For example, in *State v. Lawrence*, 40,278 (La.App. 2d Cir. 3/15/06), 925 So.2d 727, a recording of a 911 call made by a robbery victim immediately after a robbery was held admissible under the excited utterance rule. *See also State v. Rhodes*, 29,207 (La.App. 2d Cir.1/22/97), 688 So.2d 628, *writ denied,* 97-0753 (La.9/26/97), 701 So.2d 980, where a witness's statements to police made immediately upon their arrival was held admissible. As this court stated in *State v. Martin*, 39,846 (La.App. 2d Cir.8/17/05), 913 So.2d 863, *writ denied*, 06-0110 (La.6/14/06), 929 So.2d 1267:

14

This exception requires an occurrence or event sufficiently startling to render the declarant's normal reflective thought process inoperative. *State v. Reaves*, 569 So.2d 650 (La.App. 2d Cir.1990), *writ denied*, 576 So.2d 25 (La.1991). Furthermore, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. *State v. Henderson*, 362 So.2d 1358 (La.1978).

In determining whether the declarant was under stress of an excited event, the time span between the event and the statement is considered the most important factor. The trial court must determine whether the interval between the event and the statement was of sufficient duration to permit a subsidence of emotional upset and a restoration of a reflective thought process. *State v. Jasper*, 28,187 (La.App. 2d Cir.6/26/96), 677 So.2d 553, 563, *writ denied*, 96-1897 (La.2/21/97), 688 So.2d 521. Additional factors that may indicate that a statement was the result of a reflective thought are evidence that the statement was self-serving or made in response to an inquiry, or expansion of the excited utterance beyond a description of the event and into past or future facts, and proof that, between the event and the statement, the declarant performed tasks that required a reflective thought process. However these factors do not automatically justify exclusion, *Henderson, supra*; *Jasper, supra*. We also note that the Louisiana Supreme Court has long held that the admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. *State v. Johnson*, 389 So.2d 1302 (La.1980); *State v. McIntyre*, 381 So.2d 408, 411 (La.1980),*cert. denied*, *McIntyre v. Louisiana*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).

The passage of time between an event and a statement about the event is an important factor in deciding the admissibility of a statement under this exception. *See, e.g., State v. Michael*, 39,439 (La.App. 2d Cir.1/7/05), 891 So.2d 109, *writ denied*, 05-0354 (La.6/17/05), 904 So.2d 681, where the statements of a victim at the hospital after a stabbing "arguably may not have been made under the influence of the traumatic stabbing event because of the passage of time. . . ."

In the instant case, there are two sets of statements by Mr. Hill. The first statement was made to Mr. Hill's daughter immediately after the crime while the deputies searched for a suspect, and the second statement was made 15 to 30 minutes later after Defendant had been arrested.

*Id*. at 1045-46.

The second circuit found the statement made to the daughter was an excited utterance and admissible without a *Crawford* analysis because the statement was not testimonial in nature. The second circuit stated that the statement given to a non-governmental person was not testimonial in that "[t]here was nothing to suggest that the victim believed that his statements would ever be used for formal purposes such as a trial." *Id* at. 1047. However, the statement given to the police officer fifteen minutes later was testimonial and, therefore, subject to the *Crawford* analysis. While in *Griffin* the second circuit determined that the statement did not qualify as an excited utterance, it indicated that even had it been deemed an excited utterance, because it was testimonial in nature, it would have been subject to a *Crawford* analysis which required that the defense have the opportunity to cross-examine the witness.

In the current case, the state argues that both of the statements qualified as excited utterances or present sense impressions. It argues that the first statement was taken at the "Atchafalaya Bridge Mile Post 121 at 5:30 P.M., which was immediately following the chain of events." The state refers to *State v. Henderson*, 362 So.2d 1358 (La.1978), wherein the trial court admitted a written statement provided to the police approximately fifteen minutes after the crime was committed. The state further argues that when the victim in the instant case gave the second statement at the police department five hours later, she was still under the stress and shock of the incident. "This was a harrowing an ordeal as any, and it is plausible that the victim remained 'under the stress of excitement caused by the event,' and her statement was 'not the result of reflective thought'."

16

The defendant argues that the "first statement was made to Officer Levier after the victim was removed from the crime scene to a rest area, and the second statement was made almost five hours later to Detective Whaley in Eunice at the police station." The defendant contends that neither statement was spontaneous and that the victim had "sufficient time to reflect or fabricate a reaction to the events."

With regard to the second statement, taken at the Eunice Police Department, we note that it was taken five hours after the end of the high speed chase and that the victim had more than adequate time to regain her composure and restore a reflective thought process. By then, the victim had been taken from the scene, clothed, and settled down. In fact, there was testimony that that the victim actually drove herself to the police station, more than an hour away from where the defendant stopped the vehicle. This, undoubtedly, was an opportunity for quiet reflection of the events. Therefore, the second written statement was not an excited utterance or present sense impression and was inadmissible hearsay.

We do find, however, that the first written statement, given to the police within fifteen minutes after the defendant escaped into the swamp, was an excited utterance and, therefore, an exception to the hearsay rule. However, the inquiry does not end there. The statement made at the bridge was testimonial in nature, and the facts given in the statement were offered into evidence to prove the truth of the matter asserted. According to the rationale of the United States Supreme Court in *Crawford*, the statement is still not admissible unless the defendant had a prior opportunity to cross-examine the victim before the testimonial statement was introduced into evidence. The state asserts that the defendant's failure to cross-examine the victim at trial satisfies that requirement. We disagree.

In *State v. Williams*, 04-608 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, *writ denied*, 05-81 (La. 4/22/05), 899 So.2d 559, the fifth circuit found that the defendant was denied his Sixth Amendment right to confront his co-defendant, who had made an out-of-court statement that the defendant was the one who killed the victim, then refused to testify at trial. The fifth circuit discussed whether the trial court erred when it admitted the co-defendant's statement into evidence, as follows:

> In this case, as previously noted, Arvel Gurganus refused to be sworn in and asserted his Fifth Amendment privilege against self-incrimination. The trial court then ruled that Gurganus was unavailable. After Gurganus was given testimonial immunity, he provided unresponsive answers to the prosecutor, when asked questions about his police statement. In his police statement, Gurganus admitted stealing a van on the morning November 25, 2000. It appears that Gurganus' statement qualifies under the declaration against penal interest exception to the hearsay rule making the statement admissible. In his statement, Gurganus incriminates himself in the additional crime of stealing a van, thereby subjecting himself to additional criminal charges, which gives reliability to his statement.
>
> In *Crawford v. Washington* however, which was rendered after the present case was tried and decided, the United States Supreme Court found that certain ex parte examinations, while admissible under modern hearsay rules, are exactly the kind of testimonial evidence against the accused that the confrontation clause is supposed to prevent: that is, testimonial evidence in the form of an out-of-court declaration to establish or prove a fact. The Supreme Court found that under the Sixth Amendment a necessary condition for the admissibility of the testimonial statements against an accused in a criminal case is the prior opportunity to confront the unavailable witness. The Court noted that statements taken by police in the course of interrogations are testimonial hearsay for purposes of the Sixth Amendment, and that these statements present a unique opportunity for prosecutorial abuse. Therefore, in light of *Crawford v. Washington,* in order for Gurganus' police statement to be admissible in the present case, the State had to show that Gurganus was unavailable and that there was a prior opportunity to confront the witness.
>
> The first question under this analysis is whether Gurganus was unavailable. Under LSA-C.E. art. 804, "a declarant is 'unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court." This

18

includes situations in which the declarant is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement, persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so, or testifies to a lack of memory of the subject matter of his statement. Here, Gurganus first asserted his Fifth Amendment privilege, and then persisted in refusing to testify concerning the subject matter of his statement when questioned by the prosecutor, which would make him unavailable under LSA-C.E. art. 804.

The State argues in its brief that Williams cannot claim that he was denied his right to confrontation, because Gurganus agreed to answer the questions posed by the defense, and the defense instead chose not to confront the witness on the subject matter of his statement, but rather focused its questions on his mental health. The State is correct that the defense's questions focused on Gurganus' mental health, but the record reveals that prior to the witness's cross-examination Gurganus stated that he did not give a statement to the police and suggested that it must have been somebody with the same name. If Gurganus did not give the statement to the police, it would, in fact, have made no sense for the defense to ask Gurganus about a statement that he testified he did not make. Assuming that Gurganus had made the statement, he was still unavailable because he testified to a lack of memory of the subject matter of his statement. Under *Crawford v. Washington* the only remaining question for determining the admissibility of the testimonial statement is whether there was a prior opportunity to confront the unavailable witness. The record reveals that there was no prior opportunity for the defense to confront Gurganus. Therefore, it appears that the trial court violated the defendant's Sixth Amendment right to confrontation by admitting Gurganus' statement.

*Id*. at 1100-02 (footnotes omitted).

Like *Williams*, the record in the current case does not reflect that there was an opportunity to cross-examine the witness at the time she made the statement or any time subsequent. The victim refused to testify regarding her statement at trial, and it was very unlikely that she was going to answer the defendant's questions either. It was error for the trial court to allow the admission of the victim's written statement, even though it was an excited utterance or present sense impression, because the statement was testimonial in nature and the defendant had no prior opportunity to confront the victim.

Despite finding that the trial court erred when it allowed the admission of the two statements into the record, we find the errors to be harmless.

> An error in the defendant's right to confrontation is subject to a harmless error analysis. If a confrontation error occurred, a reviewing court must determine whether the error is harmless beyond a reasonable doubt. In determining whether the guilty verdict rendered was unattributable to the error the following factors should be considered: 1) whether the witness' testimony was important; 2) whether the testimony was cumulative in nature; 3) whether corroborating or contradictory evidence regarding the major points of the testimony existed; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case.

*Id.* at 1102 (footnotes omitted).

After analyzing the above listed factors, the fifth circuit found that "[f]rom the totality of the evidence presented by the State, excluding Gurganus' statement, the jury could have found that defendant was a principal to the second degree murder . . . . Accordingly, we find that the confrontation error in the admission of Gurganus' statement was harmless." *Id.* at 1104.

Similarly, the victim's testimony here was not essential to the state's case. There were witnesses' testimonies and physical evidence presented to the jury regarding facts supporting the convictions for the offenses of second degree kidnapping and aggravated flight from a police officer: the 911 call wherein the victim and her children were heard screaming and begging to be released from the vehicle; Sergeant Etienne's and Officer Levier's description of the defendant's vehicle fleeing dangerously down the highway and his refusal to pull the vehicle over; theirs and Detective Whaley's description of the victim found naked, crying, and very upset in the back seat of the vehicle once the defendant made his escape; and Detective Whaley's observation of the injury the defendant had inflicted on the victim as he pulled her from the bathroom.

20

The victim's written statements were both cumulative in nature and corroborated by the testimonies of the officers and the 911 recording. There had been no opportunity to cross-examine the victim prior to trial, and finally, while the state's case concerning the second degree kidnapping offense was partially based on circumstantial evidence, excluding the victim's statements the evidence was sufficient for the jury to find second degree kidnapping and aggravated flight from a police officer beyond a reasonable doubt. Although the trial court erred when it allowed the admission of the two statements, the error was harmless in that the verdict rendered was surely unattributable to the error.

We find no merit in this assignment of error.

### *PRO SE* ASSIGNMENT OF ERROR NUMBER TWO

The defendant asserts in this assignment of error that the trial court erred when it denied his motion to quash the bill of information based on the time limitations set forth in La.Code Crim.P. art. 578(A)(2). He bases his argument on the fact that more than two years lapsed between the institution of prosecution and his trial.

Louisiana Code of Criminal Procedure Article 578(A)(2) provides that in felony cases other than capital cases, "no trial shall be commenced . . . after two years from the date of institution of the prosecution." Institution of prosecution for the purpose of applying the limitation period occurs on the date of filing of the indictment. *State v. Lewis*, 09-846 (La.App. 3 Cir. 4/7/10), 33 So.3d 1046, *writ denied*, 10-967 (La. 11/24/10), 50 So.3d 825.

In this case, the state initially charged the defendant with three counts of aggravated kidnapping on March 16, 2007, and initially charged the defendant with aggravated flight from a police officer on November 7, 2007. The defendant

21

brought his motion to quash on July 6, 2009, and after a January 21, 2010 hearing, the trial court rejected his motion on February 2, 2010. The first prospective juror was called for examination on February 1, 2011, thereby commencing trial. *See* La.Code Crim.P. art. 761.

Based on the filing dates, the defendant's motion to quash appears meritorious on its face. When a defendant has brought an apparently meritorious motion to quash based upon prescription, the state bears a heavy burden to demonstrate that the time limitation period has been interrupted or that it has been suspended so that the time limitation has not yet expired. *State v. Morris*, 99-3235 (La. 2/18/00), 755 So.2d 205.

Whether the time limitation period has been interrupted and/or suspended depends on the preliminary activity between institution of prosecution and trial. Louisiana Code of Criminal Procedure Article 580(A) provides:

> When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.

In this case, the defendant filed a motion to change venue on December 15, 2008. This filing was within the two-year period for either charge. The trial court rejected this motion on March 19, 2009. Thus, pursuant to La.Code Crim.P. art. 580(A) the state had one year from that date to commence the trial of the charges. However, the defendant then filed his motion to quash on July 6, 2009, and the trial court rejected that motion on February 2, 2010, after a January 21, 2010 hearing. This action by the defendant extended the period for beginning trial to February 2, 2011. Thus, the February 1, 2011 trial was within the one-year period allowed by La.Code Crim.P. art. 580(A).

22

We find no merit in this assignment of error.

## *PRO-SE* ASSIGNMENT OF ERROR NUMBER THREE

In his final assignment of error, the defendant argues that neither of his trial attorneys rendered effective performance and that this ineffective assistance of counsel caused him to receive an unfair trial.

In *State v. Eiskina*, 42,492, pp. 3-4 (La.App. 2 Cir. 9/19/07), 965 So.2d 1010, 1013-14, the second circuit set forth the standard by which a defendant must prove his claim of ineffective assistance of counsel:

> The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. *See State v. Wry*, 591 So.2d 774, 778 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his counsel was ineffective, Eiskina first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. *See Strickland, supra.* The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *See State v. Moore*, 575 So.2d 928, 931 (La.App. 2d Cir.1991).

> Second, Eiskina must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. *See Strickland, supra.* The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. *See Strickland, supra; State v. Pratt*, 26,862 (La.App.2d Cir.04/05/95), 653 So.2d 174, 178, *writ denied*, 1995-1398 (La.11/03/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by

23

counsel which led to the claim; general statements and conclusory charges will not suffice. *See Strickland, supra; State v. Jordan,* 35,643 (La.App.2d Cir.04/03/02), 813 So.2d 1123, 1134, *writ denied,* 2002-1570 (La.05/30/03), 845 So.2d 1067.

Furthermore, citing *Eiskina,* 965 So.2d 1010, this court observed in *State v. Lee,* 08-456, pp. 8-9 (La.App. 3 Cir. 11/5/08), 996 So.2d 1217, 1223 (citations omitted):

> Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy.

In this case, we find that the record is sufficient to address the claims made by the defendant in this assignment of error.

> In his *pro-se* brief, the defendant asserts:

> In the case at bar, defendant claims that he was prejudiced because neither one of his trial counsels ever filed preliminary examination or even move[d] to suppress the circumstantial evidence supporting the jury's verdict. The record of this case reveals that on August 20, 2009, defendant was assigned a new counsel. On this same day, the state amended its bill of information charging the defendant with three counts of Second Degree Kidnapping and one count of Aggravated Flight, without ever holding a formal arraignment on its prior bill of information.

> On February 15, 2011, the defendant proceeded in a jury trial, and on February 16, 2011 was subsequently found guilty. Prior to proceeding in trial, the defendant never had faced his accuser, and was never given the opportunity to present a fair defense on his behalf. Because the defendant never had an evidentiary hearing on any of the issues associated with arrest in this matter, the jury was only able to hear the facts the State intended to prove, thus, failing to exclude every reasonable hypothesis of the defendant's innocence.

This generalization does not meet his burden of proof in showing that he received ineffective assistance of counsel. The defendant does not specify the acts or omissions by his two defense counsels that caused him prejudice, nor does he state what other motions should have been filed. Additionally, he does not explain how a preliminary hearing would have affected the outcome of the trial or what

24

evidence should have been the subject of a suppression motion. In other words, his claims are unsubstantiated and conclusory.

We find no merit in this assignment of error.

## DISPOSITION

For the foregoing reasons, we affirm the defendant's convictions in all respects.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rules 2-16.2 and 2-16.3, Uniform Rules—Courts of Appeal.